Mingo County Medical Society, Inc. *et al.* *v.* Dr. Szin Mos Eisen Simon

(No. 9186)

Submitted May 13, 1942. Decided June 16, 1942.

*Marcum & Gibson, Bias & Bias* and *Lafe B. Chafin,* for appellant.

*Clarence W. Meadows,* Attorney General, *W. B. Hogg,* and *Mohler, Peters & Snyder,* for appellees.

LOVINS, JUDGE:

The Mingo County Medical Society, Inc., instituted a statutory proceeding before the Public Health Council of West Virginia for the purpose of revoking the license of Dr. Szin Mos Eisen Simon to practice medicine and surgery in this State. Eleven charges were specified, and, after a hearing, the council entered an order on March 4, 1940, finding Dr. Simon guilty of gross immorality and malpractice, based on certain of the charges, and revoking his license. This appeal was granted from the order of the Circuit Court of Mingo County affirming the findings and decision of the Public Health Council, Code, 30-1-9, providing for review of the decision of the council revoking or suspending a license in the circuit court of the county wherein the person so proceeded against resides, and for review of the judgment of the circuit court thereon, in this Court.

The charges of gross immorality upon which Dr. Simon was found guilty were Nos. 2, 4 and 7, as originally made by the medical society, and an additional charge, which charges, in substance, are as follows: Charge (2) That in July, 1936, Dr. Simon testified before the Public Health Council in a hearing upon charges against him for professional misconduct, that he was a naturalized citizen of the United States, when, in fact, he was not; charge (4) that after an action for malpractice was brought against him in the Circuit Court of Mingo County by James Sel-

lards, the action was continued generally after Dr. Simon presented to the court a purported affidavit of Sellards stating the action was without foundation and releasing Dr. Simon from all liability in connection therewith in consideration of the payment of $150.00, when, in fact, Sellards neither executed the affidavit nor received the money; charge (7) that in a proceeding to subject debts owing to Dr. Simon, to the lien of an execution on a judgment against him, he approched one Basil Anderson, who, at the time, was indebted to him in the sum of $296.00, and requested him to testify under oath that the debt had been fully paid; and (additional charge) that when Dr. Simon operated the Mercy Hospital in Williamson, he proposed an agreement to Dr. Akers by which Dr. Akers would receive a percentage of fees obtained from patients he referred to the hospital. The council also found Dr. Simon guilty of malpractice on charge No. 3, as preferred by the medical society, which alleged that he treated James Sellards for a fracture of the thigh bone so negligently, ignorantly and improperly, in violation of accepted rules for treatment, that Sellards will not recover from the injury.

Dr. Simon was born in Hungary in 1900 and was graduated from the University of Leipzig in 1926 with the degree of Doctor of Medicine. In 1931 he received his "first papers" under naturalization laws in Connecticut, and in November, 1932, was duly licensed to practice medicine and surgery in this State. He was thereafter employed by the Superintendent of the Huntington State Hospital, and in October, 1935, went to Williamson where he has been engaged in the practice of his profession and associated with the Mercy Hospital, being so engaged at the time of the institution of this proceeding.

The assignments of error relate to procedure and the insufficiency of evidence on the questions of gross immorality and malpractice. The record is voluminous and detailed, especially on the charges of malpractice, there being established a conflict of medical evidence as to whether Simon followed the proper procedure in treating

Sellards. In view of our recent holdings in the cases of *Anchor Coal Co.* v. *Public Service Commission,* 123 W. Va. 439, 15 S. E. 2d 406, and *West Central Producers Co-Operative Association* v. *Commissioner,* 124 W. Va. 81, 20 S. E. 2d 797, (decided February 24, 1942), following the trend of a long line of decisions on review of the findings of administrative bodies, it is useless to extend this opinion with a recital of the facts developed. Suffice it to say that we cannot interfere with the findings of the Public Health Council "unless it has exceeded the power which it could constitutionally exercise, has gone beyond its statutory powers, or its action is based upon a mistake of law." *Anchor Coal Co.* v. *Commission, supra.* It was stated in that case that a failure of the administrative body to give consideration to evidence proper to be considered may be classified as a mistake of law. However, we find nothing in the record which would warrant our disturbing the council's findings on the factual question as to malpractice under the principles just referred to, though the showing herein might not be sufficient in a civil action by a patient against his physician for malpractice. It should be noted that a finding of malpractice, on conflicting evidence, by a, board composed of physicians should be entitled to peculiar weight. As to the finding of gross immorality, the limitations of this Court upon review of the same, likewise apply, and we further believe that the finding of a board of physicians on that question is entitled to the same weight as that on the question of malpractice. "Gross immorality" should be measured by the standards of each profession, and in this particular profession, where the standards should admittedly be of the highest, where the lives of individuals may depend upon the integrity and honesty of the physician we believe the council to be especially well-fitted to determine what facts establish gross immorality. In this connection it is interesting to observe that in the case of *Crum* v. *State Board* (Ind.), 37 N. E. 2d 65, the revocation of a license to practice chiropractic, naturopathy and electrotherapy on the statutory grounds of gross immorality was

upheld where it was shown that the chiropractor employed a phenomenal machine, of which he was the inventor, in the treatment of various diseases and which machine had no value therefor. In *Brown* v. *Hassig,* 136 Kan. 384, 15 P. 2d 401, a physician who falsely represented to a patient that he had syphilis, for the purpose of obtaining a fee for the treatment of such disease, was held to be guilty of gross immorality. See also the discussion of what the statutory term "gross immorality" may include in *Indiana Board of Pharmacy* v. *Haag,* 184 Ind. 333, 111 N. E. 178. On the subject of what "gross immorality" involves, as regards the legal profession, see *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279. It can not be denied that there was some evidence to show that Dr. Simon testified falsely, that he procured and exhibited a false affidavit, that he asked Anderson to swear falsely and that he proposed a split-fee proposition as to patients referred to his hospital by Dr. Akers. We can not say that the administrative body failed to give consideration to evidence proper to be considered as in the *Anchor Coal Company* case, nor were the other principles therein stated violated by the Public Health Council in this case.

The *Anchor Coal* and *West Central Producers* cases involved proceedings wherein appeal lay directly to this Court from the body or person clothed with administrative duties, while in this case, following the procedure as outlined in Code, 30-1-9, the Circuit Court of Mingo County reviewed and affirmed the decision of the Public Health Council. Code, 30-1-9, does not provide for a hearing *de novo* but gives the person whose license has been revoked the right to have such decision reviewed and determined by the circuit court of the county in which he resides, without a jury, upon the record of proceedings before the board, after which such court may affirm, revise or reverse the decision, if it appears that the same was "clearly wrong". The order of the Circuit Court of Mingo County recites that "this court cannot say, upon the entire record, that the said decision and order of the Public Health Council * * * was clearly wrong". Therefore, in

addition to the general principles relating to review of the findings of administrative boards, we have herein the added weight of the circuit court's affirmance.

Appellant contends that the charges preferred against him and particularly the charges on which he was found guilty, do not mention "gross immorality" or "malpractice" but merely set out isolated and unconnected incidents. We perceive that the Public Health Council in its findings and the circuit court's affirmance of same refer to gross immorality and malpractice "as charged in the complaint." Code, 30-3-6, gives the council the right to "refuse to grant a certificate of license to a person guilty of felony or gross immorality * * * and may suspend or revoke a certificate for like cause, or for malpractice * * *." The Code provision relating to the proceeding to revoke a license before the council requires service of "a statement of the charges against the holder thereof." Code, 30-1-8. It is therefore claimed that Dr. Simon should have been furnished with a statement specifically charging him with gross immorality and malpractice. While it would no doubt have been better pleading to have alleged by way of conclusion to charges 2, 4, 7 and the charge relating to Dr. Akers, that the same constituted gross immorality, and in charge No. 3 that it constituted malpractice, we do not believe such an omission is fatal. Charges before such administrative boards, "need not be stated with the technical nicety or formal exactness required of pleadings in the courts." *State ex rel. Williams* v. *Whitman,* 116 Fla. 196, 150 So. 136, 156 So. 705, 95 A. L. R. 1416, and cases therein cited. In *Eddy* v. *Board,* 116 W. Va. 698, 182 S. E. 870, this Court held that in specifying charges against a licensed optometrist it was unnecessary to set forth the statutory ground for revocation *in haec verba,* if the facts alleged were sufficient in themselves to apprise the person of the statutory ground upon which his right to the license was being challenged. Each of the charges to which reference has been made, contained a statement of the facts upon which the Medical Society expected to rely. We believe that appellant was thereby

fully informed of the charges against him or, using the language of Code, 30-1-8, that appellant was served with "a statement of the charges."

As to the assignment of error relating to the exclusion of three members of the council from the hearing, we believe a thorough reading of the statutes will reveal the propriety of such action. It is argued that since Code, 16-1-3, provides that one member of the council shall be a dentist, and Code, 30-16-1, provides for two chiropractors to be members of the council, because of the exclusion of such additional members from this hearing, appellant was not tried by the Public Health Council as contemplated by statute. It is only necessary to read fully Code, 16-1-3 and 30-16-1, to see that the duties of the dentist and chiropractors as members of the council do not relate to the regulation of the practice of medicine.

Appellant contends that the statute providing for revocation of a license, being penal in nature, should be strictly construed, and that the provision therein for revocation of the license of a person "guilty of felony or gross immorality" requires a finding of such guilt by a court or tribunal as a prerequisite to a hearing before the Public Health Council on a charge thereof. With this contention we agree as to the finding of guilty of a felony for such guilt can be established only in certain courts and under the requirements and safeguards of Constitution, statute and common law. Felonies are defined by Code, 61-11-1 as offenses punishable with death or confinement in the penitentiary. Therefore, the statute prescribing the punishment for an offense determines whether such offense be a felony, so that in this State there are no felonies except as designated by statute. *State* v. *Harr*, 38 W. Va. 58, 17 S. E. 794. Likewise, under Federal Law, felonies are classed as offenses punishable by death or confinement for more than one year. In the absence of a statutory definition of gross immorality, we believe the Public Health Council is empowered to determine whether a person is "guilty of gross immorality" under the standards of the medical profession. The Supreme Court of Kansas so held in *Brown* v.

*Hassig, supra,* where the statute, like ours, permitted revocation of a license granted to any person guilty of a felony or gross immorality.

Dr. McClue, a member of the Public Health Council and its secretary, sat as a member of the council in the Simon hearing. He was also called upon to read from the record of the hearing before the council in 1936, at which it was alleged that Dr. Simon testified falsely as to his citizenship. We disapprove of such a practice and do not wish to encourage it because of the manifest prejudice to the person whose license is sought to be revoked, which could result therefrom. However, in this particular instance, we do not regard it as reversible error. Dr. McClue, as secretary of the council and custodian of its records, was merely called upon to introduce in this record the statements made by Simon in the previous hearing, and was not called upon to testify as to any facts or occurrences within his knowledge. Also, counsel stipulated on the record that the transcript of the 1936 hearing need not be introduced.

The order of the Circuit Court of Mingo County is affirmed.

*Affirmed.*