(No. 47803.—

CHICAGO & ILLINOIS MIDLAND RAILWAY COMPANY, Appellant, v. THE DEPARTMENT OF REVENUE *et al.,* Appellees.

*Opinion filed May 28, 1976.—Rehearing denied June 28, 1976.*

Isham, Lincoln & Beale, of Chicago (Philip F. Purcell, Laurence D. Lasky, and Clark Evans Downs, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Chicago & Illinois Midland Railway Co. (the Railway), brought this action in the circuit court of Cook County against the Department of Revenue, Robert Allphin, Director of Revenue, and Alan Dixon, Treasurer of the State of Illinois, pursuant to "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment" (Ill. Rev. Stat. 1973, ch. 127, pars. 170 through 176a (hereinafter Protest Act)). The Railway sought a refund of Illinois use tax (Ill. Rev. Stat. 1973, ch. 120, pars. 439.1 through 439.22) it had paid under protest. The trial court temporarily enjoined the transfer of the protested funds to the State treasury, but declined to hear the merits of the complaint and ordered that the Railway submit its claim to the Department of Revenue. From that order the Railway appealed to the appellate court (Rule 304(a), 58 Ill.2d R. 304(a)), and we granted the Railway's motion to transfer the appeal to this court pursuant to Rule 302(b). 58 Ill.2d R. 302(b).

In December, 1973, employees of the Department informed the Railway that an audit of the company's books showed a deficiency of $92,746.03 for Illinois use tax and interest thereon owed on certain purchases of coal cars and car repair materials. Believing these transactions exempt from use tax under the "rolling stock exemption" (Ill. Rev. Stat. 1973, ch. 120, par. 439.3(b)), the Railway paid the tax under protest, before it had received a formal notice of tax liability, and sought a temporary injunction and a judicial determination of the dispute under the Protest Act. Section 2a of that act provides:

> "Every officer, board, commission, commissioner, department, institute, arm or agency to whom this Act applies is to notify the State Treasurer as to money paid to it under protest as provided in Section 2a.1 and the Treasurer is to place such money in a special fund to be

known as the protest fund. At the expiration of 30 days from the date of payment the money is to be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest unless the party making that payment under protest has filed a complaint and secured within that 30 days a temporary injunction, restraining the making of that transfer and unless, in addition, within that 30 days, a copy of the temporary injunction has been served upon the State Treasurer and also upon the officer, board, commission, commissioner, department, institute, arm or agency to which the payment under protest was made, in which case such payment and such other payments as are subsequently made under notice of protest, as provided in Section 2a.1, by the same person, the transfer of which payments is restrained by such temporary injunction, are to be held in the protest fund until the final order or decree of the court. The judicial remedy herein provided, however, relates only to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest." Ill. Rev. Stat. 1973, ch. 127, par. 172.

After the temporary injunction had issued, the Director of Revenue petitioned the trial court to enter an order refusing to decide the merits of the complaint and directing the Railway to pursue its administrative remedies before the Department of Revenue, urging that course was required by this court's decision in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill.2d 350. If the Railway had withheld the disputed tax, it could have had an administrative hearing after receiving a notice of tax liability from the Department. (Ill. Rev. Stat. 1973, ch. 120, pars. 439.12, 443, 444.) Or the Railway could have paid the disputed tax, filed a claim for credit or refund, and had an administrative hearing after protesting the Department's notice of tentative determination of claim. (Ill. Rev. Stat. 1973, ch. 120, pars. 439.19, 439.20.) The final administrative decision resulting from either course would then have been reviewable in the circuit court under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 264

through 279), which has been expressly adopted by the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, pars. 439.12, 451). The trial court entered an order as requested in the Director's petition.

The issue thus presented is whether, where a system of agency or departmental hearings is available and the final decision of the department or agency is reviewable under the Administrative Review Act, a taxpayer may seek a judicial determination under the Protest Act of the propriety of a disputed tax without exhausting the administrative remedies. For the reasons hereinafter stated, we believe he may.

It is clear from the proceedings in the trial court that the judge considered our opinion in *Illinois Bell* as foreclosing consideration by him of the merits of the Railway's claim. That conclusion was urged by the Department and believed by the judge to follow from this language in that opinion:

> "Although review under the [Administrative Review] Act applies only to final administrative decisions, it seems clear that unlimited freedom to seek judicial review of the merits of the issue before an agency has rendered a final administrative decision would severely undermine the legislative purpose manifest in its enactment." (60 Ill.2d 350, 357.)

What has been overlooked, however, is that this language was used in the context of our consideration of the continuing desirability of the judicially created exceptions to the doctrine that equity will not take jurisdiction of the cause where an adequate remedy at law exists, which exceptions this court had announced in *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245. We determined in *Illinois Bell* that the continued existence of the additional exceptions to the exhaustion doctrine created by *Owens* was not compatible with the legislative purpose in later adopting the Administrative Review Act. *Illinois*

*Bell* demonstrated our willingness to implement that legislative purpose by eliminating those exceptions which this court had announced in *Owens,* but what we are here urged to do is quite a different matter.

The plaintiff in *Illinois Bell* had predicated its action on the *Owens* exceptions. The Railway here, however, has proceeded under the Protest Act earlier referred to. That act, first adopted in 1911, was amended in 1961 so that section 2a thereafter read:

> "Sec. 2a. It shall be the duty of every officer, board, commission, commissioner, department, institute, arm or agency brought within the provisions of this Act by Section 1 hereof to notify the State Treasurer as to money paid to such officer, board, commission, commissioner, department, institute, arm or agency, under protest as provided in Section 2a.1 hereof, and the Treasurer shall place such money in a special fund to be known as the protest fund. At the expiration of 30 days from the date of payment the money shall be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest unless the party making such payment under protest shall have filed a complaint in chancery and secured within such 30 days a temporary injunction, restraining the making of such transfer, and unless, in addition, within such 30 days, a copy of such temporary injunction shall have been served upon the State Treasurer and also upon the officer, board, commission, commissioner, department, institute, arm or agency to which such payment under protest was made, in which case such payment and such other payments as are subsequently made under notice of protest, as provided in Section 2a.1 hereof, by the same person, the transfer of which payments is restrained by such temporary injunction, shall be held in the protest fund until the final order or decree of the court. *The judicial remedy herein provided,* however, shall relate only to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest and *shall not be available at all under the circumstances described in the next paragraph except to the extent stated in such paragraph.*

If the person who remits the money to the State under protest and secures a temporary injunction which is served within 30 days as hereinbefore provided is entitled, by the particular statute under which he remits the money to the State, to file a claim for credit rather than for a cash refund, and the final administrative decision of the administrative agency with which such claim for credit would be filed is judicially reviewable under the Administrative Review Act, approved May 8, 1945, as amended, the court issuing the temporary injunction shall not hear the case, but the sole purpose of such temporary injunction shall be to hold the protested payment of money in a fund from which it can be refunded to the extent (if any) to which the claim for credit filed with the administrative agency is approved by such agency or by the final order of a reviewing court under the Administrative Review Act. If the authorized claim for credit is not filed with the administrative agency within 60 days after the temporary injunction hereinbefore provided for is secured and served, the court which issued such temporary injunction, either on its own motion or on a motion filed by the State, shall order the State Treasurer to transfer the protested payment of money out of the protest fund and into whatever fund in the State Treasury such money would have been deposited if the money had not been paid under protest in the first instance, and the State Treasurer shall promptly comply with such court order. The same disposition of the protested money shall be made to the extent to which the claim for credit is disallowed by the administrative agency with which such claim is filed and no suit for judicial review of such administrative decision is filed under the Administrative Review Act within the time allowed by that law, or to the extent to which the reviewing court, if a suit is filed under the Administrative Review Act with respect to the total or partial disallowance of such claim, affirms the decision of the administrative agency disallowing such claim. To the extent to which such claim for credit is allowed, either by the administrative agency with which the claim is filed on its own initiative or pursuant to the final order of a reviewing court under the Administrative Review Act, a certified copy of such administrative or judicial decision approving the claim for credit in whole or in part shall be transmitted by such administrative agency or by

the clerk of the court entering such final order, as the case may be, to the court which issued the temporary injunction hereinbefore provided for, whereupon such court shall order the State Treasurer to make the proper refund from the protest fund to the person remitting the money under protest, and the State Treasurer shall promptly comply with such court order." (Emphasis added.) Ill. Rev. Stat. 1961, ch. 127, par. 172.

That act was again amended in 1969 to delete the material which had been added to section 2a in 1961. The argument here focuses upon the legislative purpose in so doing.

While not necessarily controlling, "an amendment creates a presumption that it was intended to change the law as it formerly existed." (*Scribner v. Sachs* (1960), 18 Ill.2d 400, 411.) "The function of this court is to construe the statute in accordance with the normal import of the words used, whatever its opinion may be regarding the desirability of results produced by the operation of the statute." (*People ex rel. Carruthers v. Cooper* (1949), 404 Ill. 395, 400.) It seems clear, if the amendatory language is accepted at face value, that it was intended to eliminate existing authority of the circuit court, where no final administrative decision had occurred, to hear the merits of those cases in which a taxpayer had the statutory right to file a claim for credit with the department, officer or agency to whom the payment was originally made and the disposition of that claim for credit was judicially reviewable under the Administrative Review Act. We can discern no other purpose in the provision of the first paragraph of section 2a that "The judicial remedy herein provided *** shall not be available at all under the circumstances described in the next paragraph except to the extent stated in such paragraph," and the provision of the next paragraph that "the court issuing the temporary injunction shall not hear the case, but the sole purpose of such temporary injunction shall be to hold the protested payment of money in a fund" pending the outcome of the

administrative hearing and any subsequent review thereof under the Administrative Review Act.

Consideration of the practice under the Protest Act prior and subsequent to adoption of the Administrative Review Act in 1945 supports this interpretation. Prior to 1945, courts acting upon complaints filed under the Protest Act were not limited to enjoining transfer of the protested payments into the State treasury, but also decided the merits of those complaints. (*Stratton v. St. Louis Southwestern Ry. Co.* (1932), 284 U.S. 530, 76 L. Ed. 465, 52 S. Ct. 222; *Svithiod Singing Club v. McKibbin* (1942), 381 Ill. 194; *Libby, McNeill & Libby v. Stratton* (1935), 359 Ill. 398.) Similarly, courts acting upon such complaints subsequent to the adoption of the Administrative Review Act passed upon their merits despite the existence of departmental or agency administrative hearing procedures. (*Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 98.) The Administrative Review Act by its terms applies only to "final decisions" of administrative agencies (*Calderwood Corp. v. Mahin* (1974), 57 Ill.2d 216), and nothing in that act required any change in use of the Protest Act by taxpayers willing to pay taxes under protest and as to whom the administrative decision had not become final. As to such taxpayers, however, the 1961 amendment to the Protest Act effectively precluded a court acting under that act from considering the merits of the case whenever the administrative decisions would be reviewable under the Administrative Review Act. In our judgment the only logical conclusion to be drawn from the 1969 repeal of that limitation is that those courts were again free to consider the merits of a claim in those cases where no final administrative decision had been made. (*Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90.) If the 1961 amendment is interpreted as applying only to taxpayers entitled to file claims for credit, as contrasted to taxpayers entitled to file claims for refund, its relevance to this case would be even less, for the

Railway was entitled, under the statutory provisions earlier cited, to file a claim for refund.

The Department argues that the 1961 insertion in the Protest Act of the amendatory language and its subsequent deletion in 1969 are explained by the differing language pertaining to jurisdiction of the circuit courts in the 1870 Constitution:

> "The circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law ***" (Ill. Const. 1870, art. VI, sec. 12)

and that of the 1962 amendment of the judicial article, which was continued, in substance, in the 1970 Constitution:

> "The Circuit Court shall have unlimited original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law" (Ill. Const. 1870, art. VI, sec. 9, as amended effective January 1, 1964).

The Department does not indicate why the 1961 amendment was then thought necessary after the Administrative Review Act had been in effect for some 16 years, and we do not find its argument persuasive. In our judgment an explanation of the legislative action more nearly consonant with the language used is that the 1961 amendment restricted the authority of the circuit court under the Protest Act as earlier indicated, and that deletion of that amendatory language in 1969 restored the authority of the court to hear the merits of those cases in which the taxpayer was willing to pay the tax under protest and proceed under the Protest Act.

It is apparent, of course, that a taxpayer willing to pay under protest may thus avoid the administrative hearings provided by the applicable statutes here, and in many other cases, if he acts prior to the commencement of proceedings before the department or governmental agency. To us, that procedure seems to some degree inconsistent with the spirit of the Administrative Review

Act. But for us to adopt the interpretation urged by the Department would require us to say, in effect, that the statutory language repealed in 1969 remains in force. Apart from that incongruous result, the fact is that a taxpayer would then be required to pay his tax to the governmental agency, then secure a court injunction against its transfer to the State treasury, return to the agency for hearings on the merits of the case, and then again return to court for an order authorizing disposition of the protested payment in accordance with the agency's final determination, or seek a review thereof under the Administrative Review Act. Such procedure seems extraordinarily cumbersome and extravagant in terms of time and expense, and we will not presume that the legislature intended inconvenience or absurdity. *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill.2d 556, 566; *Illinois National Bank v. Chegin* (1966), 35 Ill.2d 375, 378.

Considering the absence of a logical explanation for the General Assembly's action other than an intent to provide, for the taxpayer willing to pay his taxes under protest, an alternative to the departmental hearings reviewable under the Administrative Review Act, we conclude that the Railway here is entitled to have the circuit court consider the merits of its complaint. If, in so holding, we have misread the legislative intent, the remedy is readily available.

The judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent herewith.

*Reversed and remanded.*