(No. 50570.—
(No. 50571.—
(No. 50663.—

SHELDON MILLER, Appellee, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION, Appellant. —THEORDORE DOLITSKY, Appellee, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION, Appellant.—AARON FINN, Appellant, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION, Appellee.

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

CLARK, UNDERWOOD, and MORAN, JJ., dissenting.

William J. Scott, Attorney General, of Springfield (Charles J. Pesek, Special Assistant Attorney General, of Maywood, of counsel), for appellant.

Samuel Shkolnik, of Chicago, for appellee Sheldon Miller.

Bernard B. Brody, of Chicago (Allan A. Ackerman, of Ackerman, Durkin & Egan, of counsel), for appellee Theodore Dolitsky.

Joel M. Hurwitz, of Fohrman, Lurie, Holstein, Sklar & Cottle, Ltd., of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Charles J. Pesek, Assistant Attorney General, of Chicago, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

The Director of the Department of Registration and Education (Department) revoked three pharmacists' licenses to practice pharmacy after an administrative determination that they were guilty of "gross immorality" under the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7—6, now Ill. Rev. Stat. 1977, ch. 111, par. 4019, as amended). The revocations were premised upon Federal convictions following the entry of pleas of guilty

by Theodore Dolitsky, Sheldon Miller and Aaron Finn to the Federal misdemeanor offense of offering and making a kickback or bribe in connection with the furnishing of drugs and pharmaceutical services for which payment is made in whole or in part out of Federal funds under an approved State medical assistance plan (42 U.S.C. sec. 1396h(b)(1) (1976)). The pharmacists filed three separate actions for administrative review in the circuit court of Cook County.

The complaints filed by Miller and Dolitsky were heard by Judge Richard L. Curry, who ruled that the term "gross immorality" is unconstitutionally vague; that the Federal misdemeanor offense to which Miller and Dolitsky pleaded guilty is not encompassed by the legislative proscription of "gross immorality"; and that the pharmacists did not receive a fair hearing before the State Board of Pharmacy since the Board was supplied with the entire 49-count indictment, although the pharmacists were convicted upon only one count following their guilty pleas. Judge Curry reversed the decision to revoke, and the Department filed the instant direct appeal under Rule 302(a) (58 Ill. 2d R. 302(a)) on the ground that the circuit court had held section 7—6 of the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7—6) invalid.

The complaint filed by Finn was heard by Judge Arthur L. Dunne, who found that the order of revocation was properly entered and affirmed the decision as not contrary to the manifest weight of the evidence or contrary to law. This court allowed Finn's motion for direct appeal under Rule 302(b) (58 Ill. 2d R. 302(b)) and consolidated all three appeals.

The pharmacists' licenses were revoked following three separate hearings before the State Board of Pharmacy. At each hearing certified copies of the Federal convictions were introduced as evidence. Copies of the multicount indictments were attached to the complaints

filed with the Board, and in the cases of Miller and Dolitsky, they were admitted into evidence over the objection of counsel. In each case the Board found that the pharmacist had been convicted of the Federal misdemeanor and concluded that the conviction of such an offense constituted "gross immorality" within the meaning of the Pharmacy Practice Act. The Board recommended to the Director of Registration and Education that the pharmacists' licenses be revoked. After the denial of separate motions for rehearing, the Director accepted the findings, conclusions and recommendations of the Board and revoked the licenses of all three pharmacists.

The first issue we address is whether conviction of the Federal misdemeanor offense to which the pharmacists pleaded guilty may constitute a basis for the revocation of their licenses under the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, pars. 55.1 to 55.24). The pharmacists were convicted of paying kickbacks or bribes to nursing homes in connection with the furnishing of drugs and pharmaceutical services in violation of a Federal statute, which at the time the offenses were committed provided:

> "(b) Whoever furnishes items or services to an individual for which payment is or may be made in whole or in part out of Federal funds under a State plan approved under this subchapter and who solicits, offers, or receives any—
>> (1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment, or
>> (2) rebate of any fee or charge for referring any such individual to another person for the furnishing of such items or services
> shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both." 42 U.S.C. sec. 1396h(b) (1976).

At the time the pharmacists committed the acts which formed the basis of the Federal misdemeanor convictions,

the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7—6) provided that the Department of Registration and Education shall "[r]efuse to issue or renew, or revoke or suspend, any license or certificate of registration issued under the provisions of this Act or of any prior Act of this State when such registration is satisfactorily shown to have been obtained by fraudulent means, or when the applicant for or holder of such license or certificate has been convicted in this or any other state of any crime which is a felony under the laws of this state or convicted of a felony in a federal court, or is *found to be guilty of gross immorality,* or is found to have wilfully violated any of the rules and regulations promulgated for the administration of this Act, or to be addicted to drugs to such a degree as to render him unfit to practice pharmacy in this state." (Emphasis added.) No express provision was made for revocation for the commission of misdemeanors or for the payment of bribes or kickbacks. Revocation of the licenses of the pharmacists was based on the general ground of "gross immorality."

The meaning attached to a statutory provision is derived from an examination of the language of the statute and its purpose (see *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 507). The statute should be evaluated as a whole; each provision should be construed in connection with every other section and in light of the statute's general purposes (*Neville v. Friedman* (1977), 67 Ill. 2d 488, 492; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131).

The principal concern of the Pharmacy Practice Act, as provided in the legislative declaration, is with the protection of public health, safety, and welfare.

> "The Practice of Pharmacy in the State of Illinois is declared a professional practice affecting the public health, safety and welfare and is subject to regulation and control in the public interest. It is further declared to be a

matter of public interest and concern that the practice of pharmacy, as defined in this Act, merit and receive the confidence of the public and that only qualified persons be permitted to practice pharmacy in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes." (Ill. Rev. Stat. 1973, ch. 91, par. 55.1.)

The Act is designed to assure, through regulations and control in the public interest, that only those who possess the requisite professional qualifications are licensed to practice pharmacy.

The term "practice of the profession of pharmacy," as defined in the Act, means "the compounding, dispensing, recommending or advising concerning contents and therapeutic values and uses, offering for sale or selling at retail, drugs, medicines or poisons, whether pursuant to prescriptions or orders of duly licensed physicians, dentists, veterinarians, or other allied medical practitioners, or in the absence and entirely independent of such prescriptions or orders, or otherwise whatsoever, or any other act, service operation or transaction incidental to or forming a part of any of the foregoing acts, *requiring, involving or employing the science or art of any branch of the pharmaceutical profession, study or training.*" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 91, par. 55.3(d).) The definition emphasizes the performance of acts requiring professional study and training in the science of pharmacy, rather than the business aspects of the practice of pharmacy.

The pharmacists and the Department place emphasis on *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, for the proposition that only convictions for misdemeanors which concern the practice of pharmacy constitute "gross immorality" within the intent and purpose of the Pharmacy Practice Act. The pharmacists argue that their misdemeanors did not concern the practice of pharmacy; the Department argues to the

contrary. In *Gordon* the pharmacist pleaded *nolo contendere* in the United States district court to two charges of dispensing drugs without a prescription in violation of Federal law. The State Board of Pharmacy determined that two separate sales of legend drugs without a prescription on the same date to the same person indicated a woeful disregard for regulations and was contrary to the public interest. The *Gordon* court noted that "[t]here are, indeed, many misdemeanors which are not concerned with professional practice and conviction upon such may not be a concern of public interest or welfare." 130 Ill. App. 2d 435, 439.

The payment of kickbacks or bribes is not concerned with the exercise of the professional skill of a pharmacist, the focus of the definition of the practice of pharmacy. Such conduct is related to matters 'extraneous to the central concern of the Pharmacy Practice Act, the protection of public health, safety, and welfare through regulation of the practice of pharmacy. A misdemeanor conviction for the payment of kickbacks or bribes is not "gross immorality" for purposes of pharmacy-license revocations.

Subsequent to the commission of the conduct which formed the basis for the pharmacists' Federal convictions, section 7—6 of the Pharmacy Practice Act was amended, effective August 27, 1975, to include fee splitting as a ground for license revocation (Ill. Rev. Stat. 1975, ch. 91, par. 55.7—6, now Ill. Rev. Stat. 1977, ch. 111, par. 4019). Fee splitting, as defined in section 10—1 of the Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.10—1, now Ill. Rev. Stat. 1977, ch. 111, par. 4032), encompasses the conduct which formed the basis for the plaintiff pharmacists' Federal misdemeanor convictions. Section 10—1 prohibits payments to employees, owners or managers of nursing homes of "any rebate, refund, discount, commission or other valuable consideration for, on

account of, or based upon income received or resulting from the sale or furnishing *** of drugs or devices, prescriptions or any other service to patients." The amendment expressly including fee splitting as a basis for revocation is a further indication that such conduct was not included in the general term "gross immorality" (see *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 373) and cannot constitute a basis for the revocation of the plaintiff pharmacists' licenses.

We hold it was error to revoke the plaintiff pharmacists' licenses on the ground of "gross immorality" based upon their convictions of a Federal misdemeanor offense involving the payment of kickbacks or bribes. For this reason, the judgment reversing the revocation of Miller's and Dolitsky's licenses is affirmed. The judgment affirming the revocation of Finn's license is reversed. Because of our disposition of this cause, it is unnecessary for us to consider the constitutional issues raised.

*50570 — Judgment affirmed.*
*50571 — Judgment affirmed.*
*50663 — Judgment reversed.*

MR. JUSTICE CLARK, dissenting:

The issue is whether "guilty of gross immorality," as set out in section 7.6 of the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7–6), encompasses the plaintiffs' Federal misdemeanor offenses of offering or making kickbacks or bribes in the course of furnishing drugs and pharmaceutical services. The majority seems to base its reasoning on essentially two points. First, the majority sees here a lack of nexus between the kickbacks or bribes and the actual practice of pharmacy. Second, it finds significant that, subsequent to the plaintiffs' commission of the Federal misdemeanors, the legislature enacted a provision which makes such conduct a ground for license revocation (Ill. Rev. Stat. 1975, ch. 91, par. 55.7–6, now

Ill. Rev. Stat. 1977, ch. 111, par. 4019). Hence, it concludes, such conduct does not constitute "gross immorality."

I disagree.

First, the plaintiffs' payments of kickbacks or bribes were in connection with furnishing pharmaceutical services, or the practice of pharmacy. That is defined by statute:

> "The term 'practice of pharmacy' or 'practice of the profession of pharmacy' means and includes the compounding, *dispensing,* recommending or advising concerning contents and therapeutic values and uses, *offering for sale or selling at retail,* drugs, medicines or poisons, whether pursuant to prescriptions or orders of duly licensed physicians, dentists, veterinarians, or other allied medical practitioners, or in the absence and entirely independent of such prescriptions or orders, *or otherwise whatsoever, or any other act, service operation or transaction incidental to or forming a part of any of the foregoing acts,* requiring, involving or employing the science or art of any branch of the pharmaceutical profession, study or training." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 91, par. 55.3(d).)

That language clearly is broad enough to bring the conduct of plaintiffs within the scope of the Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.1 *et seq.*), specifically within the ambit of "gross immorality," proscribed by section 7.6 of the Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7—6). Moreover, section 1 of the Act provides that it "shall be liberally construed to carry out" the purposes of the Act, also set out in section 1:

> "The Practice of Pharmacy in the State of Illinois is declared a professional practice affecting the public health, safety and welfare and is subject to regulation and control in the public interest. It is further declared to be *a matter of public interest and concern that the practice of pharmacy,* as defined in this Act, *merit and receive the confidence of the public* and that only qualified persons

be permitted to practice pharmacy in the State of Illinois." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 91, par. 55.1.

The plaintiffs' conduct was a betrayal of public confidence; they failed to meet their obligation to the public. Their actions were not profit-seeking schemes involving *outside* illicit business activities such as fraudulent real estate ventures or giving kickbacks on providing *non*pharmaceutical services, or *unrelated* misdemeanors such as traffic offenses. If it had been so, I would not be dissenting. (See *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, 438-39.) Rather, their wrongful conduct was integrally a part of their profession or livelihood. The plaintiffs dispensed drugs and pharmaceutical services on the basis of monetarily induced demand. Such conduct would rightly encourage consumers and other members of the public to question the plaintiffs' honesty and integrity while dealing with them. Prevention of injury would seem to be the purpose justifying State licensing of a profession. A qualification for receiving and retaining such professional licenses would seem to be honesty and integrity. (See generally *People ex rel. State Board of Health v. Apfelbaum* (1911), 251 Ill. 18, and *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968.) Plaintiffs apparently lacked that qualification while practicing their profession.

Second, the legislature's proscription of fee-splitting, including payment of kickbacks and bribes, by enactment after the plaintiffs' illegal activities occurred, does not persuade me that this misdemeanor conduct was not, therefore, within the bounds of "gross immorality." True, a legislative amendment creates a presumption that a change in law is effected, but this presumption is neither conclusive nor controlling. (*Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6, 11-12; *Merrill v. Drazek* (1975), 62 Ill. 2d 1, 6; *Chicago & Illinois Midland*

*Ry. Co. v. Department of Revenue* (1976), 63 Ill. 2d 474, 481.) It "may be overcome by more persuasive considerations." (*Scribner v. Sachs* (1960), 18 Ill. 2d 400, 411.) " 'Gross immorality' should be measured by the standards of each profession ***." (*Mingo County Medical Society, Inc. v. Simon* (1942), 124 W. Va. 493, 496, 20 S.E.2d 807, 809. Accord, *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, 438-39.) Here, the Board of Pharmacy, composed of plaintiffs' peers within the pharmacy profession, determined that plaintiffs' conduct fell below those standards. I think they would have an intimate knowledge of the complexities and mechanics of their profession such as would justify giving substantial weight to their findings and the Department's decision. This I find more persuasive than legislative afterthought.

I must acknowledge my serious misgivings about the legislature's use of the words "gross immorality." That is a broad, vague concept deserving of critical analysis. However, given the majority's choice of not addressing that constitutional issue, given the inseparable connection between the plaintiffs' profession and conduct as well as their betrayal of public confidence, and given the interpretation of "gross immorality" *by plaintiffs' peers,* I must conclude that the Department's revocations should have been affirmed.

UNDERWOOD and MORAN, JJ., join in this dissent.