FIRST DIVISION
May 22, 2006

No. 1-04-2907

| | | |
|---|---|---|
| NATIONAL CITY CORPORATION AND SUBSIDIARIES, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03 L 51443 |
| THE DEPARTMENT OF REVENUE; BRIAN A. HAMER, Director of the Department of Revenue; and JUDY BAAR TOPINKA, Treasurer of the State of Illinois, | ) ) ) ) ) | Honorable Alexander P. White, |
| Defendants-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This is an interlocutory appeal from a circuit court order enjoining defendants, the Illinois Department of Revenue, Brian A. Hammer in his capacity as the Director of the Illinois Department of Revenue and Judy Baar Topinka in her capacity as Treasurer of the State of Illinois (collectively, the Department), from transferring money paid under protest by plaintiff National City Corporation & Subsidiaries (National City) to the State's general revenue fund. See 188 Ill. 2d R. 307(a)(1). We are asked to decide whether National City may avoid exhausting administrative remedies available to it for protesting income tax liability by filing a cause of action in the circuit court under the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 *et seq.* (West 1998)). We hold it may do so and affirm

the trial court.

The dispute here involves whether gains and losses realized from the sale of stock and other investments are taxable "business income" within the meaning of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/101 *et seq.* (1998)) or nontaxable "nonbusiness income."  National City filed income tax returns for the years 1998 through 2000, classifying the gains from the sale of stock and other investments as nonbusiness income.  The Department audited those returns and informed National City that the gains were business income and subject to taxation.

The Department sent a "notice of proposed deficiency" to National City on November 12, 2003.  In a letter accompanying the notice, the Department advised National City that it could pay the disputed taxes under the Protest Monies Act.  The Department explained the advantages and disadvantages of this alternative and told National City that it must "file in Illinois Circuit Court and pay the entire [disputed] tax and interest prior to November 18, 2003."

National City submitted payments to the Department under the Protest Monies Act on November 17, 2003.  On this same date, National City filed a complaint in the circuit court under the Protest Monies Act.  National City sought an order enjoining the Department from transferring the money paid under protest from the State's protest fund to the general revenue fund or any other fund.  National City's complaint also sought a determination on the merits of the tax dispute and a refund of the money paid under protest.  The Department filed a motion to dismiss the complaint under sections 2-615 and 2-619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(1) (West 1998)).  The circuit court denied the motion and entered a preliminary injunction enjoining the Department from transferring the protest funds.

The circuit court denied a Department motion to reconsider and the Department appealed.

The Department argues on appeal the circuit court lacked subject matter jurisdiction of National City's complaint because the controversy was not ripe for adjudication. This issue requires us to examine of the statutes and regulations governing protested tax liability. Our review is *de novo*. See Andrews v. Kowa Printing Corp., 217 Ill. 2d 101, 106, 838 N.E.2d 894 (2005) (the construction of a statute is a question of law that is reviewed *de novo*); Doe v. Chicago Board of Education, 213 Ill. 2d 19, 23-24, 820 N.E.2d 418 (2004) (a ruling on a motion to dismiss under either section 2-615 or section 2-619 of the Code is reviewed *de novo*); Walker v. State Board of Elections, 65 Ill. 2d 543, 553, 359 N.E.2d 113 (1976) (whether an actual controversy exists and is ripe for adjudication is reviewed *de novo*); Doe v. Department of Professional Regulation, 341 Ill. App. 3d 1053, 1059-60, 793 N.E.2d 119 (2003) (review of a preliminary injunction is *de novo* where the circuit court did not make findings of fact).

National City maintains we should review the circuit court order for an abuse of discretion. It cites Amtech Systems, Corp. v. Illinois State Toll Highway Authority, 264 Ill. App. 3d 1095, 1101, 637 N.E.2d 619 (1994), a case in which the court applied an abuse of discretion standard of review to decide an issue of standing. But see Dimensions Medical Center, Ltd. v. Advanced Ambulatory Surgical Center, Inc., 305 Ill. App. 3d 530, 534, 712 N.E.2d 880 (1999) (disagreeing with the standard of review announced in Amtech Systems). The standard of review for issues of standing is not helpful here because the Department has not challenged National City's standing to bring this action. The *de novo* standard applicable to the interpretation of statutes and regulations is well suited.

1-04-2907

The Department first contends National City's complaint was not ripe for adjudication because the Department had not yet issued a final notice of deficiency subject to judicial review. National City responds that a final notice of deficiency is not a prerequisite to filing a complaint under the Protest Monies Act.

Ripeness, in the *context of a challenged administrative action, is* a component of justiciability. Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency, 215 Ill. 2d 219, 231, 830 N.E.2d 444 (2004). The ripeness doctrine is designed to protect agencies from judicial interference until an administrative decision has been formalized. Alternate Fuels, 215 Ill. 2d at 231. In deciding whether a controversy is ripe for adjudication, a court must evaluate the fitness of the issue for judicial decision and the hardship to the parties of withholding judicial consideration. Alternate Fuels, 215 Ill. 2d at 231.

In support of the Department's position that National City's action was not ripe for judicial consideration, our attention is directed to the administrative regulations governing the Department's collection authority and taxpayer protest procedures. See 86 Ill. Adm. Code §100.9000 *et seq.* (2000). Under those regulations, the Department is authorized to review income tax returns and propose adjustments where it believes them to be necessary. 86 Ill. Adm. Code §100.9000(b)(2) (2000). If the taxpayer disagrees with the Department's proposed adjustments, he may initiate his "administrative appeal rights" through an "office conference." 86 Ill. Adm. Code §100.9000(b)(2) (2000). The purpose of the office conference is to give the taxpayer an opportunity to speak with the auditor who proposed the adjustments and hasten an agreement on the disputed tax liability. 86 Ill. Adm. Code §100.9000(b)(2) (2000). If the

4

dispute is not resolved through conference, it will be submitted to the Department's audit review staff for technical and arithmetic review. 86 Ill. Adm. Code §100.9000(b)(3) (2000). The audit review staff will then issue a notice of deficiency in compliance with section 904(c) of the Tax Act (35 ILCS 5/904(c)) (West 2000) ("[a] notice of deficiency *** shall set forth the adjustments giving rise to the proposed assessment and the reasons therefor")). 86 Ill. Adm. Code §100.9000(b)(3) (2000). The taxpayer may protest the notice of deficiency by requesting a hearing before the Department under sections 904(d) and 908(a) of the Tax Act (35 ILCS 5/904(d), 908(a) (West 2000)). 86 Ill. Adm. Code §100.9000(c) (2000).

The Department next directs our attention to the administrative regulations governing informal review procedures for protested tax liability. See 86 Ill. Adm. Code §215.100 *et seq.* (2001). These regulations were adopted in April 2001 to "afford[] taxpayers an opportunity to resolve disagreements with the Department after a liability has been proposed, but before commencement of the formal protest and administrative hearing process." 86 Ill. Adm. Code §215.100 (2001). This informal review process starts with a letter of proposed liability, also referred to as a "Notice of Proposed Liability." 86 Ill. Adm. Code §215.115 (2001). A taxpayer who receives a notice of proposed liability may request review with the Informal Conference Board (ICB). 86 Ill. Adm. Code §215.115 (2001). The ICB reviews the accuracy of the proposed adjustment and recommends an "appropriate conclusion," which is final only on the Department. 86 Ill. Adm. Code §§215.100, 215.120(e) (2001). This is all done before the Department issues a notice of deficiency to the taxpayer. 86 Ill. Adm. Code §215.100 (2001).

The Department interprets these two parts of the Administrative Code together as a

comprehensive informal review process pending the issuance of a notice of deficiency. But the regulations provide taxpayers with distinct opportunities for review. To understand their proper application, we look to the legislation from which they were promulgated. See 35 ILCS 5/1401 (2000) (giving the Department authority to promulgate rules and regulations relating to the administration and enforcement of the Tax Act).

Article 9 of the Tax Act concerns the Department's administration of tax collection and the procedures for tax disputes. Section 904(a) reads:

> "Examination of return. As soon as practicable after a return is filed, the Department shall examine it to determine the correct amount of tax. If the Department finds that the amount of tax shown on the return is less than the correct amount, it shall issue a notice of deficiency to the taxpayer which shall set forth the amount of tax and penalties proposed to be assessed. *** The findings of the Department under this subsection shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax and penalties due."

35 ILCS 5/904(a) (West 2000).

The taxpayer may protest the proposed assessment "in such form as the Department may by regulations prescribe." 35 ILCS 5/908(a) (West 2000); see also 86 Ill. Adm. Code §100.9000 *et seq.* (2000) (regulations governing protest procedures). If a protest is initiated, the Department must reconsider the proposed assessment and grant the taxpayer a hearing if one is requested. 35 ILCS 5/908(a) (West 2000). After reconsideration and a hearing, if one was requested, the Department must issue a notice of decision that sets forth the Department's decision and findings

of fact. 35 ILCS 5/908(b) (West 2000). The Department's decision will become final 30 days after the notice of decision is issued in the absence of a request for rehearing. 35 ILCS 5/908(d) (West 2000). A final decision under section 908(d) is subject to judicial review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2000)). 35 ILCS 5/1201 (West 2000).

The protest procedures set forth under Article 9 of the Tax Act begin with the issuance of a notice of deficiency. These are formal procedures that are administered by the Department through regulations provided in the Administrative Code (86 Ill. Adm. Code §100.9000 *et seq.* (2000)). The informal review process, on the other hand, takes place before a notice of deficiency is issued. 20 ILCS 2505/2505-510 (West 2000). The regulations governing the informal review process are distinct from those governing the formal review process. See 86 Ill. Adm. Code §215.100 *et seq.* (2001). The distinction is necessary to determine the status of National City's administrative protest at the time it filed its action in the circuit court.

The record shows that, on November 12, 2003, the Department sent National City a letter proposing certain adjustments to its 1998, 1999 and 2000 tax returns. The adjustments related to the characterization of gains and losses realized from the sale of stocks and other investments. The letter was accompanied by a "notice of proposed deficiency." There is no showing from the record that National City had undergone an informal review process with the ICB. Nor is it evident that National City had received a "notice of deficiency" under section 904(c) of the Tax Act or had undergone formal protest procedures. The record supports the Department's position that it had not yet issued to National City a final decision subject to judicial review under the

7

Administrative Review Law. See 35 ILCS 5/1201 (West 2000).

But, as National City points out, it did not bring its cause of action under the Administrative Review Law. It brought its action under the Protest Monies Act. The Department concedes the Protest Monies Act gives taxpayers an alternative to administrative remedies under the Tax Act. But the Department maintains the taxpayer must have been issued a final notice of deficiency before the taxpayer can take advantage of this remedy.

The Protest Monies Act is distinct from the Tax Act. It requires the Department to notify the State of Illinois Treasurer of money paid to it under protest. 30 ILCS 230/2a (West 1998). The Treasurer in turn must place the money in a special fund known as the protest fund. 30 ILCS 230/2a (West 1998). The money may be transferred to the appropriate fund--in this case the general revenue fund--after 30 days, "unless the party making that payment under protest has filed a complaint and secured within that 30 days a temporary restraining order or a preliminary injunction, restraining the making of that transfer." 30 ILCS 230/2a (West 1998). Once a temporary restraining order or permanent injunction is obtained, the money must remain in the protest fund until the circuit court enters a final order or judgment. 30 ILCS 230/2a (West 1998). "The judicial remedy *** provided [for in the Protest Monies Act] *** relates only to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest." 30 ILCS 230/2a (West 1998).

The Protest Monies Act does not, on its face, require the Department to issue a final determination of tax liability before a taxpayer makes a payment under protest and files an action in the circuit court to enjoin the transfer of the protested payment. But the Department's

8

argument that it must issue a final determination of tax liability as a prerequisite to judicial review under the Protest Monies Act is persuasive. It is supported by years of jurisprudence concerning administrative review and the justiciability of actual controversies. The argument fails because, unlike the cases cited by the Department, National City does not bring its action under the Administrative Review Law.

The point is made clear in Chicago & Illinois Midland Ry. Co. v. Department of Revenue, 63 Ill. 2d 474, 349 N.E.2d 22 (1976). The taxpayer there was informed by the Department that an audit of the taxpayer's returns showed a deficiency in taxes owed. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. The taxpayer paid the proposed deficiency under protest before the Department issued a formal notice of tax liability. The taxpayer then brought a cause of action under the Protest Monies Act against the Department. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. The taxpayer sought an order from the circuit court enjoining the Department from transferring the funds and a determination on the merits of the disputed taxes. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. The circuit court entered a preliminary injunction against the Department but told the taxpayer it must first pursue its administrative remedies before the court could decide the merits of the tax dispute. Chicago & Illinois Midland Ry., 63 Ill. 2d at 477-78. The supreme court disagreed. Chicago & Illinois Midland Ry., 63 Ill. 2d at 484. The court held the taxpayer could seek judicial determination of the tax dispute under the Protest Monies Act as an alternative to exhausting its administrative remedies and pursuing judicial review by way of the Administrative Review Law. Chicago & Illinois Midland Ry., 63 Ill. 2d at 482-84. The court realized its holding allowed a taxpayer willing to pay under protest

to avoid the administrative protest procedures provided by statute and is "to some degree inconsistent with the spirit of the Administrative Review [Law]." Chicago & Illinois Midland Ry., 63 Ill. 2d at 483-84. But the court concluded the only logical interpretation of the Protest Monies Act was that it provided an alternative remedy to the formal review procedures of the Tax Act. Chicago & Illinois Midland Ry., 63 Ill. 2d at 484.

The Department attempts to distinguish Chicago & Illinois Midland Ry.. The Department argues the court did not address whether a party must receive a final determination of liability before filing an action under the Protest Monies Act. But the court specifically found that its holding allowed a taxpayer to avoid the protest procedures provided for by statute and pursue judicial review of its tax dispute without first obtaining a Department decision that is subject to review under the Administrative Review Law. Chicago & Illinois Midland Ry., 63 Ill. 2d at 478, 484. Like National City, the taxpayer there had not yet received a formal notice of tax liability. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. The Department had merely *proposed* a tax liability. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476.

The Department next argues we should not be persuaded by Chicago & Illinois Midland Ry., and should look instead at National Marine, Inc. v. Illinois Environmental Protection Agency, 159 Ill. 2d 381, 639 N.E.2d 571 (1994), as dispositive of this case. The plaintiff there received a notice from the Illinois Environmental Protection Agency (Agency) that it was potentially liable for violating the Environmental Protection Act (EPA). National Marine, 159 Ill. 2d at 382-83. The plaintiff brought a cause of action in the circuit court seeking judicial review of the Agency's issuance of the notice. National Marine, 159 Ill. 2d at 383. The circuit

court dismissed the complaint on the ground the action was premature and the plaintiff failed to exhaust its administrative remedies. National Marine, 159 Ill. 2d at 383. The supreme court upheld the circuit court's decision. National Marine, 159 Ill. 2d at 393. The court found the preliminary notice of potential liability not subject to judicial review:

"Notifying a party that it is subject to an investigation which may potentially lead to the institution of an action against that party does not create a claim capable of judicial resolution. [Citations.] The [Agency's] notice neither determines nor adjudicates the liability, rights, duties or obligations of the party subject to it. It merely puts the party 'on notice' that it may be potentially liable under *** the [EPA] and requests that the party take certain response or remedial actions. [Citation.] The party may then undertake the response action requested, may meet and attempt to settle with the Agency, or may choose to ignore the notice entirely. [Citation.] Issuance of the *** notice is preliminary to any final determination of liability by an adjudicative body and neither disposes of the proceedings nor adjudicates legal duties or rights. As such, the issuance of a *** notice is an interlocutory action and has no legal effect in and of itself." National Marine, 159 Ill. 2d at 389.

The court went on to explain there was no "actual" controversy in that case because no legal liability was imposed on the plaintiff through the Agency's notice. National Marine, 159 Ill. 2d at 390.

Unlike National Marine, a legal liability had been imposed on National City before it

11

filed its cause of action in the circuit court. The liability is made evident through the Department's November 12, 2003, letter and accompanying notice of proposed deficiency to National City. The letter informs National City that the Department revised its audit results and assessed National City's tax deficiency at $2,228,082. The Department then advised National City that it may be subject to double interest and penalties if it did not pay all or some of the assessment amount by November 18, 2003. The Department also informed National City that, if it wanted to pay the assessment amount under the Protest Monies Act, it would be subject to a single interest and penalty if it did not prevail in court. Alternatively, National City could surrender its right to challenge the proposed liability and pay the Department its "proposed" assessment. See 35 ILCS 745/1 *et seq.* (West 2004). National City was given less than a week to decide between these alternate actions. Clearly, under these facts, the letter and notice of proposed deficiency imposed a legal liability on National City. It appears, for all practical purposes, that the Department had concluded its audit investigation at the time the letter and notice of proposed deficiency had issued. Unlike the facts in National Marine, the Department rendered more than an opinion of tax liability. It told National City to pay the assessment and give up any right to protest or be subject to penalties.

Also, there was no alternative remedy available in National Marine. The only remedy available there was through administrative channels. That is not the case here. Chicago & Illinois Midland Ry. makes clear that a taxpayer may avoid administrative protest procedures by filing an action under the Protest Monies Act. Chicago & Illinois Midland Ry., 63 Ill. 2d at 482-84.

The Department next argues there must be an "assessment" issued by the Department before a claim under the Protest Monies Act may be brought and that no such assessment was issued here. The Department cites Shell Oil Co. v. Department of Revenue, 95 Ill. 2d 541, 545-46, 449 N.E.2d 65 (1983), where the court used the word "assessment" in explaining a taxpayer's options once he receives a retail occupation tax assessment from the Department: "[a] taxpayer who questions the correctness of an *assessment* of retailers' occupation tax may *** pay the tax under protest pursuant to the Protest Monies Act and have the circuit court pass upon the protest." (Emphasis added.) The Department also cites section 2a of the Protest Monies Act, which also uses the word "assessment" in describing the type of agency action that would prompt a payment under protest. 30 ILCS 230/2a (West 1998). The Department does not explain what an "assessment" is or how it is different from a notice of proposed deficiency. We find persuasive the Department's own language in its November 12, 2003, letter to National City, describing its revised audit results as an "assessment." The letter begins: "Enclosed are the revised audit results. The revised *assessment* is $2,228,082." (Emphasis added.) If an "assessment" is required before an action under the Protest Monies Act can be brought, we find the notice of proposed deficiency satisfies this element.

Semantics aside, we must decide whether a controversy ripe for consideration under the Protest Monies Act was created by the Department's issuance of the notice of proposed liability. Our supreme court in Chicago & Illinois Midland Ry. did not directly decide this issue. But we presume it considered its jurisdiction *sua sponte* in that case. See People v. Fuller, 187 Ill. 2d 1, 7, 714 N.E.2d 501 (1999) (a court has an independent duty to consider its jurisdiction). The

13

Department had informed the taxpayer that an audit of the taxpayer's books showed a tax deficiency. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. Believing the Department's proposed assessment incorrect, the taxpayer filed an action under the Protest Monies Act before receiving a formal notice of tax liability. Chicago & Illinois Midland Ry., 63 Ill. 2d at 476. The procedural posture at the time the taxpayer filed its cause of action in Chicago & Illinois Midland Ry. was identical to the posture of this case when National City filed its complaint. Because the supreme court believed an informal notice of proposed tax liability was sufficient to confer jurisdiction in Chicago & Illinois Midland Ry., we must presume it is sufficient here.

An independent review confirms this result. In deciding whether a controversy is ripe for adjudication, a court must first consider whether the complaint states an actual legal controversy between the parties. Shipp v. County of Kankakee, 345 Ill. App. 3d 250, 254-55, 802 N.E.2d 284 (2003). An actual controversy is a legitimate dispute involving an immediate and definite determination of the parties' rights, the resolution of which would help terminate all or part of the dispute. Shipp, 345 Ill. App. 3d at 255. The trial court next considers whether the underlying facts and issues of the case are moot or premature. Shipp, 345 Ill. App. 3d at 255. Courts may not pass judgment on abstract propositions of law, render advisory opinions or give legal advice as to future events. Shipp, 345 Ill. App. 3d at 255. Here, the notice of proposed deficiency served as notice that the Department believed National City owed taxes on income National City believed was not taxable. The controversy involves an interpretation of the Tax Act, the resolution of which would terminate the parties' dispute. The underlying facts and issues are not moot at this point. The disputed tax liability is currently held by the Treasurer in the State's

14

protest fund. It has not been released back to National City. Also, there has been no clarification or modification of the law applicable to the underlying dispute that would resolve the controversy. We are left then to consider whether the action was premature. We cannot say, based on the facts of this case, that it was. At the time the notice of proposed deficiency was issued, National City had less than a week to either pay the disputed tax amount and waive any right to protest its liability or be subject to double penalties. The liability faced by National City was real and imminent. Such liability created a justiciable controversy of the type contemplated by the Protest Monies Act. No more was required in this case.

We conclude that, although the Department had not yet reached a final decision on National City's tax liability reviewable under the Administrative Review Law, the notice of proposed deficiency was sufficient to create a justiciable controversy under the Protest Monies Act. The circuit court has jurisdiction to enjoin the Department from taking further action with respect to the funds paid by National City under protest, as well as jurisdiction to decide the merits of whether the gains and losses realized from the sale of stocks and other investments constitute "business" or "nonbusiness" income within the meaning of the Tax Act. The judgment of the circuit court is affirmed and the cause is remanded for further proceedings.

Affirmed and remanded.

GORDON and BURKE, JJ., concur.