CATERPILLAR TRACTOR CO. *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* DANIEL J. LENCKOS, Acting Director, Illinois Department of Revenue, *et al.*, Defendants-Appellants and Cross-Appellees.—(COCA-COLA COMPANY *et al.*, Intervening Plaintiffs-Appellants; MULTISTATE TAX COMMISSION, Amicus Curiae.)

Third District   No. 79-104

Opinion filed October 10, 1979.—Rehearing denied November 13, 1979.

William J. Scott, Attorney General, and Lloyd B. Foster, of Illinois Department of Revenue, both of Chicago (John D. Whitenack, Attorney General Special Assistant, of counsel), for appellants Illinois Department of Revenue *et al.*

William Sutter, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellants Coca-Cola Co. *et al.*

McDermott, Will & Emery, of Chicago, for appellees Caterpillar Tractor *et al.*

William D. Dexter, of Olympia, Washington, for *amicus curiae* Multistate Tax Commission.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

There is no dispute as to the facts pertinent to the issues presented on this appeal. Caterpillar Tractor Co. is a California corporation with its principal headquarters at 100 N.E. Adams Street, Peoria, Illinois. Caterpillar Tractor Co. is the parent corporation of a number of subsidiaries in the United States and foreign countries. Certain of these subsidiaries are also subject to Illinois income tax and their cases were joined

with that of Caterpillar Tractor Co. before the Illinois Department of Revenue (hereinafter referred to as the Department), before the court below and in this appeal. Joined were Caterpillar Americas Co. (Americas), Caterpillar Credit Corp. (Credit), Caterpillar Finance Corp. (Finance) and Caterpillar Machinery Corp. (Machinery). Coca-Cola and 15 other companies were permitted to intervene by the trial court. On appeal we permitted the Multistate Tax Commission to file an amicus curiae brief.

Caterpillar Tractor Co. and its subsidiaries together constitute the largest manufacturer of earthmoving, construction and materials handling equipment in the world. Each of the companies carries out one or more production, marketing, and service functions as part of an integrated enterprise. For example, Caterpillar Tractor Co. produces, sells and services virtually every item in the Caterpillar line of products. Americas, Caterpillar Overseas, S.A., and Caterpillar Far East, Ltd., are marketing companies which engage in sales and service functions in specific geographic areas. Caterpillar Tractor Co., Ltd., Caterpillar Belgium, Caterpillar of Canada, Caterpillar of Australia and other subsidiaries manufacture and sell components of, or complete machines in, the Caterpillar product line. Other companies such as Caterpillar Overseas Credit Corporation, S.A., Caterpillar of Delaware, and Credit provide financing and other services to other Caterpillar companies and to independent Caterpillar dealers which market Caterpillar products in their particular area.

Many of the Caterpillar machines are manufactured by more than one of the Caterpillar companies. Each type of machine, wherever manufactured, is identical to other machines manufactured at other plants throughout the world. Worldwide product uniformity permits maximum product and part interchange and allows any particular company to manufacture not only its own product but also components to be used in the manufacture of products by other Caterpillar companies. Consequently, there is a high degree of intercompany sales of parts and components. Product uniformity also allows for substantial uniformity of advertising, warranties, employee training and other aspects of the business carried on by each company.

Worldwide product uniformity is maintained by having the responsibility for design control, product specifications and quality assigned to a central design group located at Caterpillar Tractor Co.'s general office in Peoria. In order to further promote uniformity of products and to maximize the efficient operation of all of the companies, Caterpillar Tractor Co. exercises centralized direction over its subsidiaries, including a direction and control over manufacturing standards, budgets, accounting, compensation levels and benefits, insurance,

labor contracts, and research and development. As a result of the nature and operations of Caterpillar Tractor Co. and its subsidiaries, their operations are integrated with, dependent upon, and contribute to the overall success of the business activities of the group carried on throughout the world.

Caterpillar Tractor Co. and each of the subsidiaries subject to tax in Illinois, hereinafter referred to jointly as the plaintiffs, initially filed Illinois income tax returns for each of the years 1969 through 1974 on a separate basis utilizing the statutory apportionment formula. In these separate returns each company, where appropriate, subtracted from its Federal taxable income deemed dividends includible in Federal taxable income under section 78 of the Internal Revenue Code (hereinafter referred to as "deemed dividend income") and Subpart F income and deducted their own foreign income taxes paid or accrued which each company had credited for Federal income tax purposes.

The Department audited the plaintiffs' returns for each of the years 1969 through 1974 and denied the subtractions for the deemed dividend income and Subpart F income and foreign income taxes, proposing additional assessments of tax as a result of these adjustments. The plaintiffs paid said assessments, but on February 21, 1974, they each filed refund claims for the years 1969, 1970 and 1971 (excepting Finance, which filed a claim for 1971 only) requesting the refund of the amount of the assessments paid plus additional amounts resulting from the further subtraction of foreign dividends, interest and royalties to the extent included in base income on a nonunitary basis.

With one exception, the claims for refund relating to the taxable year 1969 were not timely filed since the three year period prescribed by the statute of limitations had expired. On May 18, 1973, Caterpillar Tractor Co. paid additional income tax and interest for the 1969 taxable year totaling $175,965.37. Therefore, the period of limitations had not expired as to this sum of $175,965.37. Six months later, on August 21, 1974, these claims were deemed denied, and subsequently protests to this deemed denial of their claims were filed in which hearings were requested.

On October 15, 1974, timely supplemental claims for refund of overpayments for 1970 and 1971 were filed asserting the applicability of the unitary apportionment method. Protests to the denial of these claims were filed on May 19, 1975.

On May 7, 1976, each of the taxpayers filed timely supplemental claims for refund of overpayment for the years 1972 through 1974. Claims also asserted the applicability of the unitary apportionment method.

Thereafter, as a result of audit examinations, 30-day letters were issued by the Department to taxpayers for the years 1969 through 1974. The taxpayers responded with timely statements of objections, and

notices of a deficiency were issued by the Department on March 8, 1978, for the tax years 1969 through 1974. Timely protests were filed on March 10, 1978, and on March 14 and 15, 1978, an administrative hearing was held before the Illinois Department of Revenue.

The Department issued a notice of decision which held, in relevant part, that the operations of Caterpillar Tractor Co. and its domestic and foreign subsidiaries constituted a unitary business during the period August 1, 1969, to December 31, 1969, and for each of the calendar years 1970 to 1974. The Department agreed with the plaintiffs that a fair apportionment of the income of Caterpillar Tractor Co. and its subsidiaries to Illinois could only be achieved through application of the unitary method of apportionment. Consequently, the Department found that the plaintiffs should be allowed, as they had requested, to use the unitary method of apportionment in determining their income tax liability in each of the years 1970 through 1974.

In addition to the Department's ultimate findings regarding the existence of a unitary business and the applicability of the unitary method of apportionment for the years 1970 through 1974, the Department made certain subsidiary findings regarding the method of computing the plaintiffs' Illinois income tax liability on the unitary method of apportionment. Finally, the Department determined that the plaintiffs were also required to use the unitary method of apportionment in 1969 even though such use had not been requested by the plaintiffs.

Administrative review of this determination was sought, and on February 9, 1979, the lower court issued an order approving the plaintiffs' use of the unitary method of apportionment for 1970 through 1974. The court also approved the plaintiffs' method of computing liability under the unitary method, i.e., deducting allegedly fictitious income, including deemed dividend income, Subpart F income and foreign income taxes paid by the Caterpillar Tractor Co. and its domestic subsidiaries as well as deducting foreign taxes of foreign subsidiaries includible in the unitary group. However, the court decided that the unitary method was applicable in determining offsets to the plaintiffs' claimed overpayment of Illinois income tax for the 1969 period. In addition, it was determined that 16 corporations were entitled to intervene concerning the issue of whether the unitary apportionment method must be applied under the Illinois Income Tax Act, but intervention was not allowed as to any factual question, no determination having been made as to whether the intervenors are unitary business operations.

■■ Initially, this court must address an issue raised by the Department concerning the propriety of the decision of the circuit court to permit the intervention of the 16 corporations. Although the right to seek review of an administrative determination is limited to parties of record in the

proceeding before the administrative agency whose rights, privileges or duties are affected by the decision (*Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 294 N.E.2d 259; *Allender v. City of Chicago Zoning Board of Appeals* (1978), 63 Ill. App. 3d 204, 381 N.E.2d 4), intervention may be granted at the administrative review level to entities which do not meet those requirements, as long as the requirements of the intervention statute are satisfied. (*Will County Board of Review v. Property Tax Appeal Board* (1971), 48 Ill. 2d 513, 272 N.E.2d 32.) Furthermore, once intervention is allowed, the intervening party may institute an appeal from an adverse determination. See *Exchange National Bank v. City of Chicago* (1963), 28 Ill. 2d 341, 192 N.E.2d 343.

Pursuant to the provisions of the Illinois Statute allowing for interventions in a circuit court, the circuit court in the case at bar, in addition to permitting intervention as a matter of discretion, found that the 16 corporations had a right to intervene. However, if permissive intervention was appropriately permitted, it becomes unnecessary to determine whether the petition should have been granted as of right. See *L.S. Heath & Sons, Inc. v. Marathon Oil Co.* (1977), 56 Ill. App. 3d 440, 371 N.E.2d 1139.

■■ In the discretion of the circuit court, a person may be permitted to intervene if a timely application is made and the applicant's claim or defense has a question of law or fact in common with the main action. (Ill. Rev. Stat. 1977, ch. 110, par. 26.1(2)(b).) While it is unnecessary for a person seeking to intervene to demonstrate a direct interest in the suit (*Mensik v. Smith* (1960), 18 Ill. 2d 572, 166 N.E.2d 265), the application must exhibit a specific, enforceable or recognizable right greater than the interest of the general public in the subject matter of the suit (*Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293).

■■■ Of course, when a determination of an issue lies within the sound discretion of the trial court, in this case intervention, the trial court's determination will not be reversed absent a clear showing of an abuse of discretion. (*United Steelworkers of America, Local 5292 v. Bailey* (1975), 29 Ill. App. 3d 392, 329 N.E.2d 867.) The petitioners in the case at bar, should the judiciary approve the use of the unitary method of apportionment of income, would be prejudiced in their own disputes with the Department. Not only is it important to allow a person to protect an interest which may be jeopardized by pending litigation to which that person is not a party, but it is desirable for reasons of judicial efficiency to avoid relitigating in another suit an issue which is already being litigated (*Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 182 N.E.2d 742). Certainly the question of whether the unitary method of apportionment is available under the Illinois Income Tax Act, the intervenors

claiming it is not, is a question of law in common with a question of law in the main action. Therefore, intervention was properly allowed.

■ It is the Department's contention, on the other hand, that the intervenors are seeking a declaratory judgment in a tax matter, which, according to the Department, is impermissible. We recognize the principles employed by the Department. Specifically, a declaratory judgment will generally not be awarded in a tax case unless injunctive relief would have been merited. (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589.) Injunctive relief may be used to prevent a tax being levied on property which is not subject to the tax, but it will not be employed to halt the collection of revenue, even for irregularities in the collection, because to so allow may well cause the government to cease operating entirely. (*Chicago, Burlington & Quincy R.R. Co. v. Frary* (1859), 22 Ill. 34.) Regardless of the subject matter of the case, injunctive relief will not be granted unless there is no adequate remedy at law, which generally means that all possible administrative remedies must be exhausted. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) It is the Department's complaint that the intervenors ought to be required to proceed with their individual cases through administrative proceedings or to use some other acceptable method to avoid that consequence, such as paying taxes under protest and thereafter seeking judicial review. See *Chicago & Illinois Midland Ry. Co. v. Department of Revenue* (1976), 63 Ill. 2d 474, 349 N.E.2d 22.

■ While recognizing these principles, we cannot agree with the recommendation of the Department to reverse the circuit court's determination on the issue of intervention based on these authorities. Having already determined that intervention is appropriate in this factual situation, we must point out that seeking intervention in an existing suit is quite different from initiating a suit to avoid an administrative determination in a particular case. Where intervention is allowed, the rights of the intervenors are generally not determined directly. However, those rights may be indirectly determined, and usually are because to seek intervention requires that a specific interest in the subject matter of the suit be demonstrated. And so, in this case the courts are not directly declaring the rights of the 16 intervenors in their disputes with the Department nor are the results of those disputes being determined in advance. Instead, the intervenors have merely been given an opportunity to present their points of view in a case which, when determined, will likely affect the outcome of those tax disputes. No declaratory judgment is sought here.

Since the circuit court's ruling on intervention was correct, we must consider the issue raised by the intervenors, whether or not the use of the unitary method of determining income is authorized or permitted by the

Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 1—101 *et seq.*). The Illinois Income Tax Act statutes in controversy were based on the Uniform Division of Income for Tax Purposes Act (UDITPA). During the years in question UDITPA was a part of the Illinois Income Tax Act. (Multistate Tax Compact, 1967 Ill. Laws 661.) Before proceeding, however, the unitary method of apportionment must be described.

The formula adopted by the State of Illinois to determine the income of a corporation attributable to activities within the State involves a two-step process. Nonbusiness income, once determined, is allocated based on specified rules. The portion of the business income allocable to Illinois is determined by means of an apportionment formula which applies an apportionment factor, the average of the percentages of the total property, the total payroll and the total sales attributable to activity in Illinois, to the corporation's business income to determine that portion of the business income properly apportioned to Illinois. Obviously, the corporation's total taxable income in Illinois is its business income apportionable to Illinois plus the nonbusiness income allocable to Illinois.

An extension of this approach, the unitary method, can be applied where a unitary business is conducted by a number of corporations. The application of the unitary method is intended to solve the problem of accurately identifying the portion of the business income of each member of the unitary business which is attributable to a given State. First, the income of each group member is computed, with nonbusiness income being identified and allocated separately as appropriate. Having arrived at the actual business income generated by the group, each member's individual apportionment factor is calculated by determining the ratio of the individual corporation's Illinois property, payroll and sales to the combined property, payroll and sales of the group, respectively, and then finding the average of the three elements. The resultant apportionment factor of the individual corporation is applied to the total group business income to determine the business income of the individual corporate taxpayer attributable to Illinois. Again, taxable income is the sum of nonbusiness income allocated to Illinois and the business income of the group member attributable to Illinois.

Several other States that have adopted UDITPA have held that it authorizes the unitary method of apportionment in determining what taxes a corporation owes that State. These States have relied principally on *Edison California Stores, Inc. v. McColgan* (1947), 30 Cal.2d 472, 183 P.2d 16, in which the California Supreme Court held that the California tax statute allowed unitary apportionment. One section of the California act provided that if the entire business of the corporation was not done within the State, the tax should be measured by that portion thereof derived from business within the State, determined by a method of

allocation based upon sales, purchases, expenses of manufacture, payroll, value and situs of tangible property or any of them or of other factors, or by such other method of allocation as may be fairly calculated to assign to the State the portion of net income reasonably attributable to business done within the State. Another section provided that net income be computed in accordance with the regular accounting method of the taxpayer, but if that method does not clearly reflect income, the computation must be made in accordance with a method designated by the commissioner which clearly does reflect the income. And another section allowed for consolidated returns.

The California court held that under the statute unitary apportionment was valid, adding that the power to apply the unitary method was not dependent on the power to require consolidated returns. Instead the power flowed from the authorized method of ascertaining the income attributable to a taxpayer's activities within the State. This holding is buttressed by cases in other States which have upheld the unitary apportionment method without the need for consolidated returns. See *Montana Department of Revenue v. American Smelting & Refining Co.* (Mont. 1977), 567 P.2d 901; *Coca-Cola Co. v. Department of Revenue* (1975), 271 Or. 517, 533 P.2d 788.

■■ The utilization of the unitary method does not ignore the corporate structure. Each individual corporation is taxed separately. The unitary method is only a device to ascertain the income attributable to the Illinois business activity of the taxpaying corporation. As a result, the express ban of consolidated returns in the reporting of income for Illinois income tax purposes (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(d)(2)(E)), is irrelevant to a determination of whether the unitary method of apportionment is to be used in Illinois.

The major advantage of the unitary method is that, with regard to the taxation of a parent company and its various subsidiaries, there is no elevation of form over substance. Without the unitary method there would be a different tax application for an integrated business which is run as a number of separate corporations rather than a single multistate corporation. (See *Coca-Cola Co. v. Department of Revenue* (1975), 271 Or. 517, 533 P.2d 788.) Since the whole point of the income tax act is to ascertain that portion of the business which is done within the State, there is no reason to find different results based simply on the formal structure of the business.

■■ As mentioned earlier, the great majority of cases in other jurisdictions have interpreted UDITPA as authorizing the unitary method of apportionment. We agree with this interpretation and hold that on the basis of the Multistate Tax Compact being in effect at that time, the Department of Revenue was correct in applying the unitary method of

apportionment. We stress that because we hold this way, we do not reach the issue of whether or not articles 2 and 3 of the Illinois Income Tax Act authorize a unitary method of apportionment.

Finally, the court is asked to consider a number of issues in which the contestants are only the plaintiffs and the Department. The first of these issues is how, or whether, the unitary apportionment method is to be applied to the fiscal year 1969 (August 1969 to December 31, 1969). The circuit court determined that the unitary apportionment method was applicable to 1969 but the Department could not utilize it in recomputing the plaintiffs' returns so as to declare a deficiency even though it could be used by the Department to offset the plaintiffs' claims for refund. The fact around which the circuit court's determination centers is that a statute of limitations prohibited the Department from assessing additional income taxes for 1969 later than October 15, 1973.

■■ Without question, the trial court's ruling is proper. Nevertheless, both parties attack it. The Department wants this court to approve its declarations of deficiencies based on the application of the unitary apportionment method to the entire taxable year of 1969, while the plaintiffs would like this court to declare that the unitary apportionment method is not even available to determine an offset against the claim for refund.

A notice of deficiency, to be effective, must not be issued later than three years after the date the return was filed, and unless such notice is timely given, a deficiency cannot be assessed or collected. (Ill. Rev. Stat. 1977, ch. 120, par. 9—905(a).) If, however, the taxpayer fails to report a change or correction, which change or correction is treated as if it were a deficiency for Federal income tax purposes, a notice of deficiency may be issued at any time. (Ill. Rev. Stat. 1977, ch. 120, par. 9—905(d).) A fair reading of this exception to the statute of limitation would require that the deficiency declared by the Department be based on the Federal change. The unitary method of apportionment is in no way related to the Federal changes involved in this case. Therefore, the Department cannot utilize the unitary method of apportionment as a basis for declaring a deficiency as to plaintiffs' 1969 income taxes.

This was the interpretation the Department initially applied, basing their proposed additional tax liabilities for plaintiffs' fiscal year 1969 on the Federal changes alone and utilizing the method of apportionment originally employed by the taxpayers in their returns, on their refund claim and in the Department's prior audit. Subsequently, however, the hearing officer abandoned this approach and decided that the deficiency, as well as the overpayment, be computed by using the unitary method. Since the findings of the Department are *prima facie* correct (Ill. Rev.

Stat. 1977, ch. 120, par. 9—904(a)), and since the findings may be *prima facie* evidence of the correctness of the amount of tax due even against a claim of the Department (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437 (dissent)), the plaintiffs argue that the hearing officer should not have abandoned a presumptively correct method of apportionment.

This argument of the plaintiffs need not now be considered, since it has already been explained that the application of the unitary apportionment method to the fiscal year of 1969 to determine a deficiency was incorrect. On the other hand, a refund is not authorized unless there is, in fact, an overpayment. Even though the statute of limitations bars the assessment and collection of additional taxes, payments already received may be retained to the extent those funds do not exceed the amount which might have properly been assessed and demanded. (See *Lewis v. Reynolds* (1932), 284 U.S. 281, 76 L. Ed. 293, 52 S. Ct. 145.) As a result, the unitary method of apportionment must be applied to taxable year 1969 in order to determine to what extent overpayments were made, thereby computing the amount refundable to the plaintiffs.

■■ Simply stated, the remaining issue is whether the plaintiffs should be allowed to claim certain deductions for purposes of determining a refund for fiscal year 1969 as well as in conjunction with the application of the unitary method of apportionment in the subsequent years. In its determination, the circuit court would allow the deduction of certain fictitious income in computing the income subject to apportionment, including deemed dividend income, Subpart F income and foreign taxes paid by the Caterpillar Tractor Company, its domestic subsidiaries and its foreign subsidiaries. To make this determination, we believe, was beyond the province of the circuit court.

For the years in question, none of these deductions have been authorized by the legislature. Instead, the Illinois Income Tax Act has relied, for its definition of taxable income, on that taxable income properly reportable for Federal income tax purposes (Ill. Rev. Stat. 1969, 1971, 1973, ch. 120, par. 2—203(d)(1)). Only subsequently has the Illinois General Assembly created a deduction for one of these items, foreign taxes. (Ill. Rev. Stat. 1975, ch. 120, par. 2—203(b)(2)(F), amended by Pub. Act 79-1022, effective October 1, 1975.) Since such a statutory amendment creates a presumption that it was intended to change the former law (*Chicago & Illinois Midland Ry. Co. v. Department of Revenue* (1976), 63 Ill. 2d 474, 349 N.E.2d 22), it becomes clear that the former law did not provide for such a deduction, even impliedly.

These deductions now claimed by the plaintiffs arise from their need to add hypothetical income to their Federal income tax returns by reason

of certain elections allowed to be made by a taxpayer under the Internal Revenue Code of 1954. To compensate, the taxpayer is allowed a corresponding credit to offset the additional income for Federal income tax purposes. For example, deemed dividend income occurs if a domestic corporation is deemed to have paid a portion of the foreign taxes paid by the subsidiary. The deemed taxes may be claimed as a foreign tax credit only if an offsetting amount is treated as dividend income received by the domestic corporation. 26 U.S.C. §§78 & 902 (1976).

The election concerning foreign taxes is even more clear-cut. Foreign taxes paid by a domestic corporation may be deducted by the taxpayer (26 U.S.C. §164(a)(3)(1976)) or credited against the tax due to the Federal Government (26 U.S.C. §§78, 901-08 (1976)).

In making these elections, the taxpayer has, presumably, lessened its Federal income tax liability. Now, the plaintiffs in this case also want to reduce their Illinois income tax liability by reversing the effect of their elections. This is authorized, according to the plaintiffs, because the "properly reportable" language of the Illinois Income Tax Act is not equivalent to "properly reported." Therefore, the plaintiffs argue, this fictitious income need not be included for Illinois income tax purposes because its exclusion from reported income for Federal income tax purposes would also have been proper.

■■■ Having made their elections, the semantic distinction is no longer available. The Illinois statute clearly expresses a legislative intent that taxable income for Illinois income tax purposes is that taxable income arrived at for Federal income tax purposes as long as the method employed to compute taxable income for Federal tax purposes was proper under the Internal Revenue Code. Federal net income is certainly a reasonable starting point for determining corporate net income for Illinois income tax. (*Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100.) As a result of their own elections, the plaintiffs have not deducted the amount of foreign taxes from and have added certain hypothetical income to their gross income, and for Federal income tax purposes, they are found by those elections. Nothing in our existing Illinois law can be found to relieve the plaintiffs of the consequences of their choices for Illinois income tax purposes. (See *Albany International Corp. v. Halperin* (Me. 1978), 388 A.2d 902.) The granting of such a deduction is a privilege created as a matter of legislative grace, and no one is entitled to a deduction not clearly allowed by statute, the burden being on the taxpayer to demonstrate entitlement to the claimed deduction. (*Bodine Electric Co. v. Allphin* (1979), 70 Ill. App. 3d 844, 389 N.E.2d 168.) A deduction being a matter of legislative grace, a court has no authority to create such a deduction as the circuit court herein allowed. This action of the circuit court must be reversed.

Accordingly, the judgment of the circuit court of Peoria County is affirmed in part and reversed in part, and the cause is remanded for a redetermination of the plaintiffs' refund for fiscal year 1969 and the plaintiffs' taxes for taxable years 1970 to 1974 not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

STENGEL and SCOTT, JJ., concur.