624 P.2d 28 (1981)
TAXATION AND REVENUE DEPARTMENT OF THE STATE OF NEW MEXICO, Petitioner,
v.
F.W. WOOLWORTH COMPANY, a New York Corporation, Respondent.
No. 12876.
Supreme Court of New Mexico.
January 19, 1981.
*30 Jeff Bingaman, Atty. Gen., Sarah E. Bennett, Asst. Atty. Gen., Taxation and Revenue Dept., Sante Fe, for petitioner.
John P. Dwyer, Albuquerque, for respondent.

OPINION
EASLEY, Chief Justice.
Woolworth appealed to the Court of Appeals a decision of the New Mexico Taxation and Revenue Department (Department) which assessed additional corporate income taxes for fiscal year 1976-77. The Court of Appeals, 95 N.M. 542, 624 P.2d 51, reversed the Department. We reverse the Court of Appeals.
There are three issues: (1) whether "gross up", meaning the foreign income taxes paid by Woolworth's foreign subsidiaries which Woolworth is required to report as dividend income in its federal income tax return in order to claim a tax credit for those foreign taxes paid, is legitimately a part of the tax base upon which New Mexico income taxes are to be calculated; (2) whether the cash dividends Woolworth receives from its foreign subsidiaries are "business income" and therefore assessable for New Mexico income tax purposes; and (3) whether the facts and law here warrant a modification of the apportionment formula.
Woolworth, a New York corporation engaged in selling general merchandise at retail throughout the United States, has four subsidiary foreign corporations which are relevant here. Its German, Canadian and Mexican subsidiaries are wholly owned by Woolworth; and Woolworth owns 52.7% of its English subsidiary.
One legal writer has depicted the tangle of competing principles involved in these issues as a "lofty plateau of complexity." We agree. The first move to finding a way out of this maze is to isolate the first issue of gross-up from the other two, which the Court of Appeals failed to do.

I. Gross-up.

The literal meaning of the term "gross-up" has been lost in the labyrinth. However, it is used here to refer to the option an American multinational corporation has under the federal income tax law to claim credit for income taxes paid to foreign governments by its foreign subsidiaries. I.R.C. §§ 901-908. It results in a federal tax benefit to the corporation based on an adjustment made to federal taxable income. It must be recognized, however, that the New Mexico tax laws do not specifically confer the same benefit to the taxpayer.
The election with which we are concerned is that foreign taxes paid by a domestic corporation may be either deducted by the taxpayer (I.R.C. § 164(a)(3)) or credited against the tax due to the federal government (I.R.C. §§ 78 and 901-908). "In making these elections, the taxpayer has, presumably, lessened its federal income tax liability." Caterpillar Tractor Co. v. Lenckos, 77 Ill. App.3d 90, 32 Ill.Dec. 786, 395 N.E.2d 1167, 1176 (1979). As stated in F.W. Woolworth Co. v. Commissioner of Taxes of State, 133 Vt. 93, 328 A.2d 402, 404 (1974):
The purpose of "gross-up" is to avoid giving the domestic corporation both a credit and a deduction for the foreign tax deemed paid on its federal income tax return, which would otherwise result from the allowance of a full credit against tax liability computed only on the dividend paid.
We deem it unnecessary to delve into all the intricacies of the federal laws and regulations. Suffice it to say that, since Woolworth decided to use the gross-up option, the income taxes paid by Woolworth's foreign *31 subsidiaries to foreign governments must be deemed to be received as dividends and the amount must be added into gross income and be reflected in the slot on the tax return form from which federal income taxes are calculated. Treas.Reg. § 1.78-1 (1979).
Woolworth does not and cannot quarrel with the soundness of the inclusion of gross-up in the gross income figure on its federal income tax return which, at Woolworth's own deliberate and knowing option, contains a fictional amount representing dividends "deemed to have been received." Gross-up amounts to over $25,000,000 in this case, on which the Department is claiming unpaid taxes on the amount of income apportioned to New Mexico.
Thus, the important starting point is the figure of gross income. This necessarily includes gross-up, which must also be calculated in determining the amount placed on line 30 for "Taxable Income" on Federal Income Tax form No. 1120, filed by Woolworth for the 1976-77 tax year and on which federal taxes were payable.
The next step is to interrelate these federal statutes and rules with the New Mexico law. Section 7-2-2(S), N.M.S.A. 1978 establishes a "piggy-back" method of determining state taxable income by reference to federal law. It provides:
"[B]ase income" [on which state taxes are calculated] means that part of the taxpayer's income generally defined as federal taxable income and upon which the federal income tax is calculated;
The New Mexico tax return form calls for the insertion of federal taxable income as the starting point for calculating state taxable income. "This is done for the convenience of the taxpayer, as a savings to the State, and to provide the State with a means of verifying the accuracy and honesty of a taxpayer's return." Getty Oil Co. v. Taxation & Revenue Dept., 93 N.M. 589, 592, 603 P.2d 328, 331 (Ct.App. 1979).
It is clear that the taxable income figure entered on line 30 of form 1120, which must reflect the addition of gross-up in gross income, is the only amount that may be used in calculating Woolworth's taxes due in New Mexico. Most states that have enacted income tax laws define taxable income in the identical manner.
Nevertheless, Woolworth in this case did not add gross-up into the New Mexico taxable income amount, upon which Woolworth paid taxes to the State of New Mexico. The Department claimed a deficiency in taxes paid. Woolworth appealed to the Court of Appeals, which erroneously sustained Woolworth's position.
Woolworth does not deny that the combined federal and state laws mandate that gross-up be reflected as state taxable income. But, it argues that the figure is artificial, that inclusion of the additional amount in apportionable income is inequitable, and that the tax administrator has the authority to cure the inequity "pending a legislative amendment." (There seems to be a tacit admission in this phrase that legislative action is probably necessary.) Woolworth further states that the administrator's authority is contained in the statute which permits a modification of the apportionment formula. The company also urges that gross-up is not income because that term means the acquisition of an economic benefit. A due process constitutional issue was raised on the theory that if gross-up is included in taxable income, Woolworth is entitled to deduct the amount of any taxes paid or deemed paid. The basis of the Court of Appeals' ruling was that gross-up is not dividend income and could not be classified as "business" income.
These issues have been answered against Woolworth's contentions in a number of cases. Admittedly, the fictitious gross-up, which the state claims is "business income" and which Woolworth deliberately acceded to, does not fit the ordinary definition of "income":
But a state has the power to gauge its income tax by reference to the income on which the taxpayer is required to pay a tax to the United States. The constitutionality of state statutes which refer to the Internal Revenue Code definitions *32 have been upheld by the courts. See, Garlin v. Murphy, 51 Misc.2d 477, 273 N.Y.S.2d 374 (1966), aff'd 34 N.Y.2d 921, 359 N.Y.S.2d 552 (1974); Thorpe v. Mahin, 43 Ill.2d 36, 250 N.E.2d 633 (1969); 85 C.J.S. Taxation § 1096b; Annot., Constitutionality, construction and application of provisions of state tax law for conformity with Federal income tax law or administrative and judicial interpretation, 166 A.L.R. 516 (1947), supplemented in 42 A.L.R.2d 797 (1955) and its supplement.
Champion International Corp. v. Bureau of Revenue, 88 N.M. 411, 416, 540 P.2d 1300, 1305 (Ct.App. 1975), cert. denied, 89 N.M. 5, 546 P.2d 70 (1975). In F.W. Woolworth Company v. Commissioner of Taxes, 130 Vt. 544, 298 A.2d 839 (1972), the court held:
Appellant contends that gross-up does not fit into the definition of "income" under the decisions of the United States Supreme Court that there must accrue, at the very least, some economic benefit or accession to wealth to the taxpayer before he can be said to have realized "income." There is no finding that by the election to use the gross-up rule the appellant did not realize an economic benefit. It clearly appears from the record, however, that the contrary is shown to be the fact. Woolworth's Vermont and federal income tax returns disclose that it gained a decided tax advantage dollarwise by exercising the option to use gross-up as a credit on its federal tax liability.
Construing the provisions of the pertinent tax statutes, we conclude it was the clear intent of the legislature that appellant's tax base must include the gross-up.
298 A.2d at 844. There is no claim and no finding that Woolworth did not obtain an economic benefit from the gross-up procedure here.
In Caterpillar, supra, the court examined several of the same complaints made here and found that after making an election which presumably lessened the taxpayer's federal income tax liability, the taxpayer was trying to reverse the effect of that election. The court stated:
Federal net income is certainly a reasonable starting point for determining corporate net income for Illinois income tax. (Citation omitted.) As a result of their own elections, the plaintiffs have not deducted the amount of foreign taxes from and have added certain hypothetical income to their gross income, and for federal income tax purposes, they are bound by those elections. Nothing in our existing Illinois law can be found to relieve the plaintiffs of the consequences of their choices for Illinois income tax purposes. (Citation omitted.) The granting of such a deduction is a privilege created as a matter of legislative grace, and no one is entitled to a deduction not clearly allowed by statute, the burden being on the taxpayer to demonstrate entitlement to the claimed deduction. (Citation omitted.)
395 N.E.2d at 1176-77.
The Illinois court held further that a court has no authority to create such a deduction. In our case the Court of Appeals effectively created a deduction that is not warranted by the statutes. See Albany Intern. Corp. v. Halperin, 388 A.2d 902 (Me. 1978); see also Dow Chemical Co. v. Commissioner of Revenue, ___ Mass. ___, 391 N.E.2d 253 (1979).
Dow rejected the argument that Subpart F income was not income under the Sixteenth Amendment of the United States Constitution, citing Estate of Whitlock v. C.I.R., 494 F.2d 1297 (10th Cir.1974), cert. denied, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).
In Getty Oil Co. v. Taxation and Revenue Department, supra, 93 N.M. at 593, 603 P.2d at 332 (Ct.App. 1979), the court said: "It is our further opinion that the phrase `federal taxable income and upon which the federal income tax is calculated' is unambiguous and self-explanatory." We agree.
We reverse the decision of the Court of Appeals which, in effect, would give Woolworth a deduction from the line 30 figure without statutory authority on the grounds that gross-up is not in fact dividend income *33 and cannot be classified as "business income." We do not think the question involves a determination of whether the income is classified as "business income." Rather, we hold that it involves consideration of a statute that is constitutional, unambiguous and not subject to statutory construction. See Hutchinson v. State, 89 N.M. 501, 554 P.2d 663 (1976).

II. Stock Dividends From Foreign Subsidiaries as "Business Income".

In addition to deducting gross-up from its taxable income on the New Mexico income tax return, as discussed in the first point, Woolworth deducted the cash stock dividends paid to it by its subsidiaries. The Department restored this income, apportioned it as business income and made an additional assessment. Woolworth appealed the ruling to the Court of Appeals, which reversed the Department's ruling.
In examining the propriety of the Department's action, there are three basic questions: (1) whether dividends from Woolworth's foreign subsidiaries are "business income" under Section 7-4-2(A), N.M.S.A. 1978 and are thus properly apportioned and assessed by the Department, or whether the dividends are "nonbusiness income" and thus allocable only to the state in which Woolworth has its "commercial domicile"; (2) whether this state's allocation of the dividends from foreign subsidiaries violates Woolworth's right of due process, because of being taxation of income not earned in New Mexico; and (3) whether the Court of Appeals improperly shifted the burden of proof of certain factors relevant to these issues.
The Department cites the following evidence favorable to its position on these issues: Woolworth owns a majority or all of the stock in its subsidiaries, has the power of total control if it cares to exercise it, has an international vice president that is responsible for overseeing its foreign subsidiaries, has interlocking directors with some of the subsidiaries, includes the subsidiaries in its overall financing and planning and would be derelict in its obligations to its shareholders if it did not oversee the operations of these companies. The managing directors of the subsidiaries are selected by Woolworth. The dividends paid are determined by Woolworth. There is a substantial exchange of business information, a teletype communication system and travel back and forth of executive personnel between the parent and its affiliates. Any substantial borrowing or other major decisions require approval of Woolworth. There is some flow back and forth of goods and financial resources. Management responsibilities are given to the foreign corporations only commensurate with the development of their abilities to act independently of the parent. In the past Woolworth has furnished investment capital and has made loans to its subsidiaries, but there were no debts outstanding at the time in question here. The dividends here were placed in Woolworth's general operating fund.
Woolworth introduced considerable evidence to support its contention that its foreign subsidiaries are independent of the parent and not part of a unitary enterprise and, therefore, the dividends received from them could not be constitutionally apportioned and assessed in New Mexico. We do not detail this evidence since we are considering the substantiality of evidence supporting the Department's decision, although all of the evidence has been assessed by the Court.

A. Whether Stock Dividends of Woolworth's Foreign Subsidiaries Are Business Income.

To overturn the Department's decision we must find that it is arbitrary, capricious or an abuse of discretion, not supported by substantial evidence or otherwise not in accordance with the law. § 7-1-25, N.M.S.A. 1978 (Repl.Pamp. 1979). Regrettably, it needs to be said that the State did a very poor job of inquiring into and developing the facts in this case.
Mr. William D. Dexter, General Counsel for the Multistate Tax Commission and the author of the amicus brief in this cause, has said:

*34 One of the most vexing problems facing the states and the business community in application of state income tax laws is the development of appropriate attribution rules for the taxation of income derived from intangible property interests by multistate-multinational corporations and their intertwined, affiliated and subsidiary corporations. (Footnote omitted.)
Dexter, Taxation of Income from Intangibles of Multistate-Multinational Corporations, 29 Vand.L.Rev. 401, 401 (1976).
A bit of history is appropriate to an understanding of the New Mexico statutory scheme for dealing with this problem. In recent years, the case law on the tests to determine apportionability within a given state of foreign or out-of-state income of multinational or multistate corporations has been developing along two parallel lines. Before the promulgation of the Uniform Division of Income for Tax Purposes Act (UDITPA), the "unitary business" concept was developed to meet the due process challenge. This principle calls for a determination as to whether a number of business operations having common ownership constitute a single or unitary business or several separate businesses for tax purposes and it depends upon whether they are of mutual benefit to one another and each operation is dependent on or contributory to others. Great Lakes Pipe Line Co. v. Commissioner of Taxation, 272 Minn. 403, 138 N.W.2d 612 (1965). The cases hold that, in order to meet due process constraints, there must be some minimal connection between the interstate business activities generating the income and the states seeking to tax that income. See Moorman Mfg. Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978).
The other line of cases looks at UDITPA and the rules passed in conjunction therewith and attempts to answer the questions by a literal reading of the statutes and rules. UDITPA was promulgated by the Conference of Commissioners on Uniform State Laws in 1957 in response to the apportionment problem. 7A Uniform L.Ann. 91 (1978). New Mexico adopted the Uniform Act in 1965. 1965 N.M. Laws, ch. 203, codified in §§ 7-4-1 to 21, N.M.S.A. 1978. In 1967 the New Mexico Legislature enacted the Multistate Tax Compact. 1967 N.M. Laws, ch. 56, codified in §§ 7-5-1 to 7, N.M.S.A. 1978. The stated purposes of this legislation are to facilitate determination of the tax liability of multistate taxpayers, promote uniformity and convenience and avoid duplicative taxation. § 7-5-1, N.M.S.A. 1978. The Multistate Tax Commission in 1973 recommended regulations to be used in attributing corporate income among the states under UDITPA and these regulations were later adopted in New Mexico. N.M. Inc.Tax Regs.
The purpose here is to provide a system by which each state in which a multistate corporation does business can obtain its fair share of income taxes and no more. We read the statutes as calling for a method of allocation which is fairly calculated to assign to New Mexico that portion of the net income reasonably attributable to the business done in this state. See Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942).
Under UDITPA, all "business income" is apportioned to the state under a formula set forth in Section 7-4-10. Section 7-4-19 provides for equitable adjustment if the apportionment of taxable income does not fairly represent the extent of the taxpayer's business activity in the state. The figure resulting from the apportionment is then assessed for taxation by the state. "Nonbusiness income", is generally allocable to the "commercial domicile" of the taxpayer under the Act. § 7-4-5.
Thus the determination of whether the dividends received by Woolworth from its foreign subsidiaries are "business income" under UDITPA is crucial. The advantage to Woolworth if it prevailed nationwide on its claim that gross-up and dividends from stock in foreign subsidiaries are deductible from gross income, as being nonbusiness income, is quite obvious, considering that this income would be apportionable only to the state of the corporation's commercial *35 domicile, New York, where no income taxes are charged. Nationwide, Woolworth would get a tax windfall on $65,000,000 of income for this tax period.
UDITPA defines "business income" and "nonbusiness income" as follows:
A. "business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations;
* * * * * *
D. "nonbusiness income" means all income other than business income;
§ 7-4-2, N.M.S.A. 1978.
N.M.Inc.Tax Regulation 17(a) expounds on the meaning of "business income":
In essence, all income which arises from the conduct of trade or business operations of a taxpayer is business income.
* * * * * *
* * * [T]he critical element in determining whether income is "business income" or "nonbusiness income" is the identification of the transactions and activity which are the elements of a particular trade or business. In general, all transactions and activities of the taxpayer which are dependent upon or contribute to the operation of the taxpayer's economic enterprise as a whole constitute the taxpayer's trade or business and will be transactions and activity arising in the regular course of, and constitute integral parts of, a trade or business.
N.M.Inc.Tax Regulation 17(b)(4) provides:
Dividends are business income where the stock with respect to which the dividends are received arises out of or was acquired in the regular course of the taxpayer's trade or business operations or where the purpose for acquiring and holding the stock is related to or incidental to such trade or business operations.
The Court of Appeals, in Tipperary Corp. v. New Mexico Bur. of Rev., 93 N.M. 22, 595 P.2d 1212 (Ct.App. 1979), cert. denied, 92 N.M. 675, 593 P.2d 1078 (1979), analyzed Section 7-4-2(A), N.M.S.A. 1978, and divided the definition of business income into two parts: (1) transactions and activity in the regular course of a taxpayer's trade or business, and (2) situations where acquisition, management and disposition of property constitute integral parts of the taxpayer's regular trade or business operations, citing McVean & Barlow, Inc. v. New Mexico Bureau of Rev., 88 N.M. 521, 543 P.2d 489 (Ct.App. 1975), cert. denied, 89 N.M. 6, 546 P.2d 71 (1975). The Court then decided Tipperary on the first part of the definition, ruling that the evidence showed that a sale of oil and gas leases was an activity in the regular course of Tipperary's business. Dexter, supra, 29 Vand.L.Rev. 401 (1976), calls the first prong a "transactional test" and the second prong a "functional or use test".
In Tipperary, the Court also adopted from Judge Wood's concurring opinion in Champion, supra, a three-prong test to determine whether income arises from transactions in the regular course of business: (1) the nature of the particular transaction, (2) former practices of the business entity, and (3) how the income is used. See Qualls v. Montgomery Ward & Co. Inc., 266 Ark. 207, 585 S.W.2d 18 (1979); Sperry and Hutchinson Co. v. Department of Revenue, 270 Or. 329, 527 P.2d 729 (1974); Great Lakes, supra. We hold that there is substantial evidence here to meet all the tests required in Tipperary. The income arose from activities of Woolworth in the regular course of its business. The income was acquired and managed as an integral part of its regular business operations. § 7-4-2(A). The purpose for acquiring and holding the stock is related to its business operations. N.M.Inc.Tax Regulation 17(a). The three-prong Tipperary test is fully met by the evidence in favor of apportionability.
B. Constitutionality of Including the Dividends as Business Income.

Having determined that the dividends are "business income" apportionable under the *36 New Mexico statutes, we now must examine whether the State's assertion of apportionability is constitutional.
The United States Supreme Court, in the case of Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), decided after the Court of Appeals' decision in our case, has answered a number of our questions.
In Mobil the Commissioner of Taxes in Vermont ruled that dividend income from Mobil's foreign subsidiaries and affiliates should be included in the tax base. Mobil claimed that this action unconstitutionally subjected the corporation to multiple taxation. The Supreme Court of Vermont found a sufficient nexus between the corporation and the State of Vermont to justify an apportioned tax on the dividends. The United States Supreme Court affirmed the decision, holding that the tax does not violate the due process clause or the commerce clause and does not impose a burden on foreign commerce.
The Court in Mobil recognized some general principles:
It long has been established that the income of a business operating in interstate commerce is not immune from fairly apportioned state taxation. (Citations omitted.) "[T]he entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs." Northwestern States Portland Cement Co. v. Minnesota, 358 U.S., [450] at 460 [79 S.Ct. 357 at 363, 3 L.Ed.2d 421]. For a State to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: a "minimal connection" between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise. (Citations omitted.) The requisite "nexus" is supplied if the corporation avails itself of the "substantial privilege of carrying on business" within the State; and "[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444-445 [61 S.Ct. 246, 250, 85 L.Ed. 267] (1940).
Id. at 436-37, 100 S.Ct. at 1231.
Mobil, however, contended that "its dividend income must be excepted from the general principle of apportionability because it lacks a satisfactory nexus" with Mobil's business activities in Vermont. Id. at 437, 100 S.Ct. at 1231. But the Court ruled that the foreign source of the income would not preclude its taxability so long as the intrastate and extra-state activities formed part of a single unitary business. See also Exxon Corp. v. Wisconsin Dept. of Revenue, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980); Butler Bros., supra. The Court stated that separate accounting may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. These factors of profitability arise from the operation of the business as a whole and "it becomes misleading to characterize the income of the business as having a single identifiable `source'." Supra 445 U.S. at 438, 100 S.Ct. at 1232.
The Court further stated:
[T]he linchpin of apportionability in the field of state income taxation is the unitary-business principle. In accord with this principle, what appellant must show, in order to establish that its dividend income is not subject to an apportioned tax in Vermont, is that the income was earned in the course of activities unrelated to the sale of petroleum products in that State. Bass, Ratcliff & Gretton [266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282] forecloses the contention that the foreign source of the dividend income alone suffices for this purpose.
* * * * * *
Nor do we find particularly persuasive Mobil's attempt to identify a separate business in its holding company function. So long as dividends from subsidiaries *37 and affiliates reflect profits derived from a functionally integrated enterprise, those dividends are income to the parent earned in a unitary business. One must look principally at the underlying activity, not at the form of investment, to determine the propriety of apportionability.
Superficially, intercorporate division might appear to be a more attractive basis for limiting apportionability. But the form of business organization may have nothing to do with the underlying unity or diversity of business enterprise. Had appellant chosen to operate its foreign subsidiaries as separate divisions of a legally as well as a functionally integrated enterprise, there is little doubt that the income derived from those divisions would meet due process requirements for apportionability. Cf. General Motors Corp. v. Washington, 377 U.S. 436, 441 [84 S.Ct. 1564, 1568, 12 L.Ed.2d 430] (1964). Transforming the same income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business, and accordingly it ought not to affect the apportionability of income the parent receives.
* * * Where the business activities of the dividend payor have nothing to do with the activities of the recipient ..., due process considerations might well preclude apportionability, because there would be no underlying unitary business. (Emphasis added and footnotes omitted.)
Id. 445 U.S. at 439-42, 100 S.Ct. at 1233-34.
The Court was similarly unpersuaded by Mobil's contention that the Vermont tax imposes a burden on foreign commerce, reasoning that this argument attempted to focus attention on the effect of foreign taxation when the effect of domestic taxation is the real issue. The Court held that the only inquiry of constitutional dimension is "the familiar question whether taxation by apportionment at home produces significantly greater tax burdens than taxation by allocation." Id. at 447, 100 S.Ct. at 1236. The Court ruled that Mobil had failed to demonstrate any sound basis, under either the due process clause or the commerce clause, for establishing a constitutional preference for allocation of its foreign source income to the state of commercial domicile. See Exxon, supra. The Court distinguished Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), relied on by Woolworth here.
Thus, under Mobil, the key question in determining the constitutionality of the allocation of Woolworth's dividends from foreign subsidiaries as apportionable "business income", is whether those dividends were income earned in a unitary business.
Our Court of Appeals has previously addressed this issue in Champion, supra, where the income in question was from renting an unneeded portion of its office building, short-term investments of operating capital and profit from the sale of timber. Champion claimed that the income was not part of its multistate unitary business. The Court of Appeals held that the income was business income since it was obtained from normal and customary practices of the corporation, and stated:
A multi-state business is a "unitary business" for income tax purposes when operations conducted in one state benefit and are in turn benefited by operations in another state. [Citing Great Lakes, supra.] "If its various parts are interdependent and of mutual benefit so as to form one integral business rather than several business entities, it is unitary." Webb Resources, Inc. v. McCoy, 194 Kan. 758, 766, 401 P.2d 879, 886 (1965).
Id. 88 N.M. at 413, 540 P.2d at 1302.
Generally, "unitary business" means a business, "the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units." Maxwell v. Kent-Coffey Manufacturing Co., 204 N.C. 365, 168 S.E. 397, 399 (1933), aff'd without opinion, 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040 (1934); see Butler Bros., supra; Great Lakes, supra.
Woolworth's investments in its foreign subsidiaries exceeded those of the parent *38 corporation. The possession of large assets by subsidiaries is a business advantage of great value to the parent; "it may give credit which will result in more economical business methods; it may give a standing which shall facilitate purchases; it may enable the corporation to enlarge the field of its activities and in many ways give it business standing and prestige." Flint v. Stone Tracy Co., 220 U.S. 107, 166, 31 S.Ct. 342, 355, 55 L.Ed. 389 (1911); see Montgomery Ward & Co. Inc. v. Commissioner of Taxation, 276 Minn. 479, 151 N.W.2d 294 (1967); Great Lakes, supra.
The Supreme Court of New Jersey has considered the precise question as here and concluded that Woolworth's is a unitary business and that its foreign dividends are business income. F.W. Woolworth Co. v. Director of Div. of Taxation, 45 N.J. 466, 213 A.2d 1 (1965).
On the due process issue and in conformity with Mobil, we hold that, for income tax considerations, there is substantial evidence in this record that Woolworth was conducting a unitary business with its foreign subsidiaries and that there is a sufficient nexus between the corporation and the State of New Mexico to justify an apportioned tax on these dividends. The income is obviously related to the mutual activities of the parent and its affiliates. The control over the subsidiaries, the interdependence, the history of the relationships, the placing of the money in the general operating account, all point to functional integration and reveal an underlying unitary business for our purposes here. We reverse the Court of Appeals on this point. Mobil, supra; Am. Smelting & Refining v. Idaho St. Tax Com'n, 99 Idaho 924, 592 P.2d 39 (1979).
Woolworth's claims as to violations of the commerce clause have no validity and are fully answered in Mobil.

C. Burden of Proof.

The Department complains that the Court of Appeals erroneously shifted the burden of proof to the Department on the question of what use was made of the income from foreign dividends. The use is pertinent in determining whether there is a unitary business. See Tipperary, supra; Sperry and Hutchinson Co. v. Department of Revenue, supra. The Department found that the dividends were placed in Woolworth's general fund and used for general corporate operating expenses. But the Court of Appeals stated that, since there was no evidence to conclude that the money was used for general corporate operating expenses, it was more reasonable to conclude that the money simply passed through the general treasury to the stockholders by way of dividends.
The Court of Appeals erred in so concluding. First, the burden was on Woolworth to demonstrate the uses made of the dividends. See Tipperary, supra; Champion, supra. This rule is based on the theory that the burden on an external agency of ascertaining the internal financial practices and procedures of a business is nearly insurmountable. See General Motors v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); 29 Am.Jur.2d, Evidence, § 131 (1967). Also, once it was established that the dividend income had been deposited in the general corporate operating fund and no evidence as to its use was introduced, the Department's reasonable inferences are conclusive. See Waldroop v. O'Cheskey, 85 N.M. 736, 516 P.2d 1119 (Ct. App. 1973).

III. Apportionment.

Woolworth claims that it was not given the full benefit of the factors in the apportionment formula, that this results in unfairness, and that the Department has statutory authority to correct inequities. The Court of Appeals never reached the issue of modification of the apportionment formula because of its holding that gross-up and dividends should not be included in Woolworth's tax base. After the hearing in this case, the Department did modify the formula to the extent of adding the foreign dividends and the foreign dividend gross-up amounts to Woolworth's sales factor denominator. Woolworth claims that this adjustment was not enough, but offered no *39 evidence upon which further adjustments could be predicated. The Department found that Woolworth failed to present "a reasonable and specific proposal" for further adjustments to Woolworth's payroll, sales and property factors and denied further modification to the formula.
"One who attacks a formula of apportionment carries a distinct burden of showing by `clear and cogent evidence' that it results in extraterritorial values being taxed. (Citation omitted.)" Butler Bros., supra 315 U.S. at 508, 62 S.Ct. at 704. The taxpayer has the burden of establishing his exemption. Norton Co. v. Dept. of Revenue, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951).
The burden of proving what modifications were necessary was definitely on Woolworth. Donald M. Drake Company v. Department of Revenue, 263 Or. 26, 500 P.2d 1041 (1972); Deseret Pharm. Co., Inc. v. State Tax Comm., 579 P.2d 1322 (Utah 1978); see Dexter, The Business Versus Nonbusiness Distinction Under the Uniform Division of Income for Tax Purposes Act, 10 Urban Lawyer 243 (1978). Further, New Mexico courts have held and our statutes provide that any assessment of taxes is presumed to be correct. Tipperary, supra; Champion, supra; § 7-1-17, N.M.S.A. 1978 (Repl.Pamp. 1979).
There was nothing arbitrary or unreasonable about the Department's conclusion that dividend income is apportionable without modification of the formula. See In Re Goodyear T. & R. Co., Corp. Income T., 1966, 1967, 1968, 133 Vt. 132, 335 A.2d 310 (1975); F.W. Woolworth Co. v. Commissioner of Taxes of State, supra. Also, there being no substantial evidence upon which further adjustments may be predicated, we affirm the decision of the Department on this issue.
This case is reversed and judgment shall enter for the Department.
IT IS SO ORDERED.
SOSA, Senior Justice, and FEDERICI, J., concur.
PAYNE, Justice.
I must respectfully dissent and agree with the analysis of the Court of Appeals.